(266 P.3d 579)
No. 103,397

STATE OF KANSAS, *Appellee*, v. RODOLFO ENRIQUEZ, *Appellant*.

Opinion filed November 4, 2011.

*Joanna Labastida*, of Kansas Appellate Defender Office, for appellant.

*J. Scott James*, assistant county attorney, *Terry J. Malone*, county attorney, and *Steve Six*, attorney general, for appellee.

Before BUSER, P.J., ARNOLD-BURGER, J., and BUKATY, S.J.

BUKATY, J.: Rodolfo Enriquez appeals his convictions for conspiracy to commit first-degree murder and possession of cocaine. He argues the trial court erred in three respects: instructing the jury it could consider evidence of prior crimes or bad acts committed by him in determining whether he possessed cocaine with intent to sell; not giving a limiting instruction as to how it should consider such evidence; and not giving a specific unanimity instruction to the jury regarding the overt acts supporting the conspiracy. We find the court did err in instructing the jury about prior crimes

and not giving a limiting instruction but those errors were harmless. We further find that a unanimity instruction was not required since this is an alternative means case. We affirm.

Noel Trejo-Medrano, a coconspirator in a drug sale conspiracy, apparently had a change of heart or a fundamental objection to the direction the conspiracy was taking. He decided he would tell the police of a conspiracy among his drug dealing partners to kill their supplier because they did not have the money to pay him for the drugs he had previously provided or for additional drugs he was to deliver.

On January 24, 2009, Trejo-Medrano drove to the Dodge City Police Department and spoke with Officer Leslie Lima about a plot to kill Servando Acosta. He said that he and Enriquez along with Joel Mendoza-Soto had driven from Nebraska to Dodge City to meet with Acosta and Javier Soto who were arriving from Texas with a kilogram of cocaine. They later met up with Trejo-Medrano's cousin, Martin Lugo. All were staying at the Days Inn Motel in Dodge City. Trejo-Medrano told the officer that Lugo and Enriquez had previously obtained a kilogram of cocaine from Acosta but were unable to sell it and did not have the money to pay Acosta for it. They devised a plan while in Colorado earlier for Acosta to front them another kilo of cocaine and deliver it to Kansas where they would kill him. Trejo-Medrano said they planned on shooting Acosta, wrapping his body in a blanket, setting it on fire, and then burying the remains in a hole.

In his statements to Officer Lima, Trejo-Medrano told her that an additional kilo of cocaine was located in a storage facility he had rented in Imperial, Nebraska. Dodge City police then notified authorities in Imperial who searched the storage facility. They discovered 685.2 grams of cocaine, some of it wrapped in smaller individual baggies. Officers also found other items and tools used for the sale of cocaine.

Detective Steven George testified that Trejo-Medrano stated he had attempted to prevent the murder by hiding some cocaine baggies in the back seat of his car as the group drove to Dodge City hoping that law enforcement officers would stop them and discover the drugs. The group also stopped at Walmart and a lumber yard

to purchase items to dispose of Acosta's body. Detective George said they had consent to search Trejo-Medrano's vehicle at the station and discovered two baggies of cocaine in the back seat. In the trunk, officers found a shovel, pickaxe, gasoline can, blanket, duct tape, and tags for new work gloves.

Trejo-Medrano had rented a room at the Days Inn Motel. He gave the officers consent to enter the room. Officers tried using Trejo-Medrano's room key, but they had to knock down the door because the security chain was in place. Officers found all of the other individuals—Acosta, Soto, Lugo, Mendoza-Soto, and Enriquez in the room. They also discovered two baggies containing cocaine or cocaine residue, new work gloves, drug paraphernalia, a kilo of cocaine underneath the mattress, and Enriquez' brown jacket with a gun and bullets in the pockets.

Officers took all of the suspects to the police station, sequestered them, and interviewed them separately. Enriquez was charged with conspiracy to commit first-degree murder, possession of cocaine with intent to sell, and possession of cocaine without a drug tax stamp. All of the suspects in this case, except for Lugo, testified at the trial about varying aspects of the plot to kill Acosta. Enriquez took the stand in his own defense and denied any conspiracy to kill Acosta. He testified that Trejo-Medrano gave the drug money to his family and then formulated the conspiracy plan so he could keep the money because he did not like Lugo or Enriquez. He claimed the gun found in his jacket was actually Trejo-Medrano's. He admitted to purchasing the items found in the trunk but claimed Trejo-Medrano wanted the items for work on his ranch. The jury convicted Enriquez of conspiracy to commit murder and a lesser charge of possession of cocaine. The trial court sentenced him to 117 months' for the conspiracy, 11 months' for possession, and ran the sentences consecutively for a total prison term of 128 months' incarceration.

Other facts will be mentioned throughout our opinion as required for an understanding of the issues on appeal.

*The Instruction Given to the Jury Regarding Prior Crimes and Bad Acts and the Failure to Give a Limiting Instruction*

Enriquez argues the trial court committed reversible error by giving an incorrect jury instruction and allowing evidence of his prior drug crimes in Nebraska and Colorado to come before the jury. In a separate but related issue in his brief, he complains about the court's failure to give an instruction limiting the consideration of the evidence. Enriquez did not object to the instruction the court gave, nor did he request a limiting instruction. We will address the arguments together.

An appellate court reviewing a trial court's giving or failure to give a particular instruction applies a clearly erroneous standard where a party neither suggested an instruction nor objected to its omission. *State v. Martinez*, 288 Kan. 443, 451, 204 P.3d 601 (2009); see K.S.A. 22-3414(3). " 'Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred.' [Citation omitted.]" *State v. Carter*, 284 Kan. 312, 324, 160 P.3d 457 (2007).

The instruction to which Enriquez objects is the third part of instruction 12, which was patterned after PIK Crim. 3d 67.13-D. It stated in relevant part:

"When a defendant is in nonexclusive possession of the premises upon which a controlled substance is found, it cannot be inferred that the defendant knowingly possessed the controlled substance unless there are other circumstances linking the defendant to the controlled substance. Factors you may consider in determining whether the defendant knowingly possessed the controlled substance include:

1. Defendant's previous participation in the sale of a controlled substance."

We agree with Enriquez that the trial court erred in giving this instruction under the holding in *State v. Boggs*, 287 Kan. 298, 317-18, 197 P.3d 441 (2008). That case disapproved the instruction under the circumstances. There, law enforcement officers arrested Boggs after they found a marijuana pipe under the passenger seat of the car in which he was riding. Boggs argued he was not in possession of the pipe under the statutory definition of possession. The Supreme Court concluded that because the only issue was

which of two men possessed the pipe, intent, knowledge, or absence of mistake were not disputed issues and, therefore, Boggs' prior convictions were not admissible under K.S.A. 60-455. 287 Kan. at 308-09. Specifically, the court stated:

"While a defendant's use of a controlled substance may be admitted—subject to the requirements of K.S.A. 60-455—when such evidence is relevant to prove a disputed material fact, the defendant's use of a controlled substance is not a factor that is automatically admissible as an exception to the specific mandates of K.S.A. 60-455. To the extent that PIK Crim. 3d 67.13-D suggests otherwise, the instruction is disapproved." 287 Kan. at 318.

We further agree with Enriquez that under *State v. Gunby*, 282 Kan. 39, 144 P.3d 647 (2006), the evidence of prior crimes and bad acts had to qualify for admission under K.S.A. 60-455, and, further, that a limiting instruction was required. However, we part from Enriquez' position on the issue of whether the trial court's failure to engage in an analysis under this statute and to give a limiting instruction requires reversal. In other words, did either situation, by itself or in combination, amount to clear error? We conclude the answer is, "No."

After setting forth an expanded requirement that prior crimes and bad acts be analyzed under K.S.A. 60-455, the *Gunby* court stated:

"We explicitly recognize that the admission of K.S.A. 60-455 evidence without the explicit relevance inquiries, particularized weighing of probative value and prejudicial effect, or prophylactic limiting instruction is not inevitably so prejudicial as to require automatic reversal. On the contrary it may be harmless. And we disapprove any language to the contrary in our previous opinions." 282 Kan. at 57.

The *Gunby* court went on to hold it would examine the error for harmlessness under K.S.A. 60-261. The court then noted that the other evidence besides that dealing with prior crimes or bad acts was overwhelming. Therefore, the lack of a K.S.A. 60-455 analysis and a limiting instruction did not amount to clear error and did not require reversal. 282 Kan. at 59.

In applying this standard to this case, we are satisfied that even had the instruction about Enriquez' prior involvement in drug sales not been given, there is not a real possibility that the jury would

have returned a different verdict. Nor is it likely the verdict would have been different had the trial court followed up the instruction it gave with a limiting instruction.

First, the evidence against Enriquez was overwhelming even without his prior involvement in drug trafficking. We start with the fact that Enriquez was in the motel room at the time police found cocaine there. When he was arrested in the room, he did not take his jacket with him even though it apparently was cold outside. Police later found a gun along with bullets in pockets of his coat. Then there was the testimony of other codefendants that they all were in Dodge City to meet Acosto and obtain more cocaine to sell. This was much more than a credibility contest between Enriquez and just one other witness. Also, all three of the codefendants testified that Enriquez asked them to help kill Acosta. Soto also confirmed the plot to kill Acosta. Importantly, the codefendants gave generally consistent statements to the police immediately after the raid on the motel room while they were sequestered at the police department. They had no opportunity to match stories.

In addition to the evidence against Enriquez, it appears on the record that if the trial court had analyzed the prior crimes evidence under K.S.A. 60-455 in accord with the dictates of *Gunby*, there would have been a basis for its admission. Citing prior case law, the *Boggs* court held: "[A] district court's admission of evidence under K.S.A. 60-455 may be upheld on review even if its rationale was in some way erroneous if an appellate court determines that the evidence was otherwise admissible under the statute. [Citations omitted.]" 287 Kan. at 310.

There are several necessary steps in order to properly admit evidence under K.S.A. 60-455. See *Boggs*, 287 Kan. at 307-08; *State v. Garcia*, 285 Kan. 1, 12, 169 P.3d 1069 (2007); *Gunby*, 282 Kan. at 48, 56-57. The trial court must determine materiality of the evidence, whether the fact or facts sought to be proved with the evidence are disputed, and whether the probative value of the evidence outweighs any prejudice. The above decisions are also clear that "the court must give a limiting instruction informing the jury of the specific purpose for admission whenever 60-455 evi-

dence comes in." *Garcia*, 285 Kan. at 12.The reason for this is that "these safeguards are designed to eliminate the danger that the evidence will be considered to prove the defendant's mere propensity to commit the charged crime." *Gunby*, 282 Kan. at 48.

The evidence of Enriquez' prior drug sales and related activity satisfies all three prongs of the foregoing test. The evidence was intertwined with the conspiracy to obtain more drugs from Acosta and then murder him to erase the debt. We agree with the State that evidence of the prior drug sales was necessary to explain the sequence of events and, above all, the motive for the conspiracy to kill Acosta in order to eliminate the debt owed for the previous drug sale. We are convinced there is practically no chance the jury would have solely relied on that evidence of the prior drug activity to demonstrate Enriquez' general criminal propensity to commit crime. The evidence would have been admissible had the trial court performed a K.S.A. 60-455 analysis.

*A Unanimity Instruction*

In his last issue on appeal, Enriquez argues it was clearly erroneous for the trial court to not give a unanimity instruction concerning the overt acts of the conspiracy. Enriquez' failure to request the instruction at trial again provides us with a clearly erroneous standard of review. See K.S.A. 22-3414(3); *State v. Carter*, 284 Kan. 312, 324, 160 P.3d 457 (2007) (court must be firmly convinced there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred).

The trial court instructed the jury as to the elements of the conspiracy charge as follows:

"The defendant is charged with the crime of conspiracy to commit murder in the first degree. The defendant pled not guilty.
"To establish this charge, each of the following claims must be proved:
1. That the defendant agreed with others to commit the crime of murder in the first degree;
2. That the defendant did so agree with the intent that the crime of murder in the first degree be committed;
3. That the defendant or any party to the agreement acted in furtherance of the agreement by:
   a. *Purchasing tools at two locations in Dodge City, Kansas; or*

*b. Requesting additional members to be part of the plan; or*

*c. That the defendant, Noel Trejo-Medrano, and Joel Mendoza-Soto traveled from Nebraska to Dodge City, Kansas, to put the plan into place;*
and,

4. That this act occurred on or about the 25th day of January, 2009, in Ford County, Kansas." (Emphasis added.)

Enriquez argues that because the instruction about the conspiracy listed three separate overt acts as elements of the offense and a determination by the jury that any one of them alone occurred would support a guilty verdict, this is a "multiple acts" case and the jury must be unanimous as to which act it determined had been committed. He urges that in order to ensure jury unanimity, either the State had to elect which of the acts it was relying on or the court had to specifically instruct the jurors that they must be unanimous in their finding about which overt act was committed. Here, the State did not make an election and the court did not give a specific unanimity instruction as to the overt acts. Enriquez argues this violated his constitutional right to a unanimous verdict. He cites *State v. Voyles*, 284 Kan. 239, 244-45, 160 P.3d 794 (2007).

Surprisingly, the State concedes this is a multiple acts case and the trial court erred in failing to give the unanimity instruction. But the State argues that reversal is not required since Enriquez presented a unified defense. The State also cites *Voyles* in support of its position.

In *Voyles*, the Supreme Court established a three-step analysis to determine whether reversal is required in a multiple acts case. The first step is to determine whether the case actually involves multiple acts, that is, " 'several acts are alleged and any one of them could constitute the crime charged.' " 284 Kan. at 244 (quoting *State v. Kesselring*, 279 Kan. 671, 682, 112 P.3d 175 [2005]). If it is determined the case does not involve multiple acts, the analysis is at an end and a unanimity instruction is not required. An appellate court has unlimited review when determining whether a case involves multiple acts. *Voyles*, 284 Kan. at 244.

The *Voyles* court found the facts in the case presented a multiple acts situation. However, those facts were quite different from those here, and *Voyles* does not provide us with a guiding light for our

task here. *Voyles* involved a defendant convicted of eight crimes: two counts of aggravated indecent solicitation of a child and two counts of aggravated criminal sodomy involving one victim, and the same four crimes involving another child victim. The victims testified to several incidents that had occurred at many different locations spread over several months. Other evidence revealed that potentially 20 different acts or offenses had been committed, but the State only charged 8 of them. Here, none of the overt acts charged constituted an act that was illegal in itself or chargeable as a crime.

We are not without guidance, however, as there are other cases with facts more analogous to those here. In *State v. Hooker*, 271 Kan. 52, 57, 21 P.3d 964 (2001), the defendant was convicted of aggravated burglary, criminal possession of a firearm, and first-degree felony murder. The trial court instructed the jury that two separate crimes—aggravated burglary *or* robbery—could support the felony murder. On appeal, the defendant argued that "the district court erred by not instructing the jury that it was required to agree on the same underlying felony to convict [the defendant] of felony murder." 271 Kan. at 57. The defendant did not request a unanimity instruction at trial.

The court in *Hooker* rejected the defendant's argument, particularly his assumption that the case involved multiple acts rather than alternative means: "The two types of felonies presented to the jury, aggravated burglary and robbery, were alternative means." 271 Kan. at 60. Thus, no unanimity instruction was required. 271 Kan. at 57. Under the alternative means analysis, " '[u]nanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means.' " 271 Kan. at 58 (quoting *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 [1994]).

In *Timley*, a jury found the defendant guilty of several counts of rape and aggravated criminal sodomy. On appeal, defendant argued the trial court erred in instructing the jury that it could find him guilty if it determined he perpetrated the sexual act by use of force *or* fear. He argued the instruction may have denied him a unanimous verdict because some jurors may have found the victim

was overcome by force and other jurors may have found she was overcome by fear. The court rejected the argument, stating:

" 'In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means, [Citations omitted.] In reviewing an alternative means case, the court must determine whether a rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt. [Citations omitted.]

" 'In multiple acts cases, on the other hand, several acts are alleged and any one of them could constitute the crime charged. In these cases, the jury must be unanimous as to which act or incident constitutes the crime. To ensure jury unanimity in multiple acts cases, we require that either the State elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proven beyond a reasonable doubt. [Citations omitted.]' [*State v. Kitchen*,] 110 Wash. 2d [403] at 410[, 756 P.2d 105 (1988)]." *Timley*, 255 Kan. at 289-90.

The *Timley* court went on to find that a rational finder of fact could have found beyond a reasonable doubt that the victim had been overcome by either force or fear. 255 Kan. at 290.

It appears the appellate courts of this state have not specifically determined whether the overt acts of a conspiracy present a multiple acts or alternative means situation. On the other hand, our courts have held that the overt acts of an *attempt* present neither a multiple acts nor an alternative means situation. See *State v. Sweat*, 30 Kan. App. 2d 756, 762, 48 P.3d 8, *rev. denied* 274 Kan. 1118 (2002). Thus, there is no requirement to instruct the jury on a specific overt act or give a unanimity instruction in attempt cases. See 30 Kan. App. 2d at 762. In reaching this conclusion, the court found as significant that the overt acts need not be illegal in themselves or chargeable as a crime. See 30 Kan. App. 2d at 762.

Neither in conspiracy cases must the overt acts be illegal in themselves or chargeable as a crime. Such cases, however, present a somewhat different situation in that, unlike the overt acts of an attempt, the overt acts of a conspiracy must be specifically alleged and proved to the jury. See K.S.A. 21-3302(a); 30 Kan. App. 2d at 762; PIK Crim. 3d 55.3. This suggests to us that while the overt

acts of a conspiracy do not present a multiple acts situation, they do present an alternative means situation.

In reaching this conclusion, we acknowledge the holding in *State v. Smith*, 268 Kan. 222, 993 P.2d 1213 (1999). There, the State alleged the defendants had committed several overt acts in furtherance of a conspiracy to commit theft. On appeal, the defendants argued that the district court erred in failing to instruct the jury on a unanimity requirement regarding the specific act or acts the jury relied upon to convict them of conspiracy. The *Smith* court did not specifically address whether the case presented a multiple acts or alternative means situation. Instead, it focused on the fact that while the district court had not given a specific unanimity instruction about which overt act the jury relied upon for the conviction, it did provide a general unanimity instruction, which provided that the jury's agreement upon a verdict must be unanimous. The *Smith* court voiced concerns about a unanimous verdict but found no error since the jury had apparently been polled as to their agreement on the overt act committed by the defendant. 268 Kan. at 230.

Here, even though the district court did give a general unanimity instruction as in *Smith*, it did not poll the jury as to the specific overt act that was committed. Regardless, that does not require reversal if the case involves alternative means and not a multiple acts situation and the record contains substantial evidence to support each alternative means.

In summary, we conclude that in the context of a conspiracy case, we are presented with an alternative means situation rather than a multiple acts situation as existed in *Voyles* which dealt with several acts any one of which could constitute the crime charged. The various overt acts listed in the instructions here as part of the elements of the conspiracy may or may not of themselves constitute a crime. Regardless, they are various means by which the single offense of conspiracy to commit first-degree murder could have been committed.

We further conclude that a rational trier of fact could have found beyond a reasonable doubt that each overt act included in the instructions occurred. Both Trejo-Mendrano and Mendoza-Soto

testified that tools were purchased at Walmart and the lumber yard for the purpose of disposing of Acosta's body. Trejo-Mendrano, Mendoza-Soto, and Soto all testified they were enlisted to help with the plot or they or their families would be harmed. Trejo-Medrano and Mendoza-Soto testified also to the trip from Nebraska to Dodge City to carry out the plan to kill Acosta. The only evidence to the contrary was the unsubstantiated testimony of Enriquez who denied any participation in any plan to kill Acosto.

We find no error in the trial court's failure to give a specific unanimity instruction concerning the overt acts of the conspiracy.

Affirmed.