No. 114,635

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RONALD COTTRELL,
*Appellant*.

SYLLABUS BY THE COURT

1.

Unanimity instruction errors are reviewed under a three-part framework. First, the reviewing court determines whether a multiple acts case is presented. The threshold question is whether jurors heard evidence of multiple acts, each of which could have supported conviction on a charged crime. If the case is a multiple acts case, the next question is whether error was committed. To avoid error, the State must have informed the jury which act to rely upon or the district court must have instructed the jury to agree on the specific act for each charge. Failure to elect or instruct is error. Finally, the court determines whether the error was reversible or harmless.

2.

In a multiple acts case, the State alleges several factually and legally distinct acts, any one of which could constitute the crime charged. Incidents are factually separate when independent criminal acts have occurred at different times or different locations or when a criminal act is motivated by a fresh impulse. The fundamental concern in multiple acts cases is that the jury may not unanimously agree on the same criminal act underlying the single charge.

1

3.

The allegation of several overt acts in furtherance of one single charge of conspiracy does not present a multiple acts case.

4.

Alternative means are the materially different ways of committing a particular crime based on the elements of the offense or the statutory definition. When criminal statutes create two or more distinct ways of committing an offense, those ways reflect alternative means. Other criminal statutes establish only one way to commit an offense, although they may use synonymous or redundant terms to define the prohibited conduct.

5.

Courts look to the plain language of the statute first to determine whether the legislature intended to create alternative means of committing the crime.

6.

Overt acts presented to a jury that are alleged to have been committed in furtherance of one conspiracy under K.S.A. 2015 Supp. 21-5302(a) are not alternative means requiring jury unanimity.

7.

When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh the evidence, resolve evidentiary conflicts, or make witness credibility determinations.

8.

When a jury instruction issue is raised for the first time on appeal, the standard of review is whether the instruction is clearly erroneous. To establish that an instruction is clearly erroneous, this court must first determine whether error was made. The party claiming error must demonstrate that the proposed instruction would have been both legally and factually appropriate based on an unlimited review of the entire record. If this court determines that error was made, it must determine whether reversal is proper. The inquiry is whether this court is firmly convinced a jury would have reached a different verdict had the instruction been given. The burden is on the defendant to establish the degree of prejudice necessary for reversal.

9.

Where the definition of a crime does not prescribe a mental state, it is nevertheless required unless the definition plainly dispenses with it.

10.

A defendant cannot challenge an instruction, even as clearly erroneous, when there has been an on-the-record agreement to the wording of the instruction at trial.

Appeal from Sedgwick District Court; ROBB W. RUMSEY, judge. Opinion filed January 27, 2017. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., STANDRIDGE, J., and HEBERT, S.J.

STANDRIDGE, J.: Ronald Cottrell appeals his convictions for unlawful distribution of controlled substances and conspiracy to distribute controlled substances. He argues that the district court erred in three respects: by failing to issue a unanimity instruction on the conspiracy charge; by failing to grant his directed verdict based on insufficiency of the evidence on all charges; and by issuing an improper jury instruction with regard to the mental state for the distribution charge. Finding no error, we affirm.

FACTS

In June 2013, Detective Eduardo Padron of the Wichita Police Department initiated an undercover narcotics investigation after receiving confidential information that Jennifer Curtis was selling prescription narcotic drugs. Padron text messaged Curtis to inquire if he could buy prescription narcotics from her. Curtis replied that her father "is the one with the product" and asked Padron what he wanted to purchase. Padron and Curtis ultimately agreed that Padron would purchase 8 oxycodone pills and 20 hydrocodone pills in exchange for $350.

Curtis text messaged Detective Padron on the afternoon of June 5, 2013, that "[h]e's got yours ready" and arranged a location for the exchange. They agreed to meet at a QuikTrip near Curtis' house. Padron arrived in an unmarked vehicle with a hidden camera installed in the back to record the transaction. Six or seven additional officers were in the area to monitor and conduct surveillance in case anything went awry, including another detective who took still photographs of the transaction.

Before the planned meeting, Detective Padron looked up Curtis' phone number to verify it was associated with her. Padron also located a photograph of Curtis so that he would recognize her when he saw her. When Padron arrived at the QuikTrip, he called Curtis and observed a white female answer the phone; he noted that she was with two unidentified males. After this phone call, Padron waited for several minutes, but Curtis

never approached Padron's car. Curtis then texted him that she was "[s]till waiting on my pops," which Padron understood to mean her father.

About 20 minutes after arriving at the QuikTrip, Detective Padron observed a blue pickup arrive at the QuikTrip and saw Curtis approach the truck. Curtis called Padron and asked him if he would move his car further south; when Padron refused, he heard a male voice in the background say, "[F]uck it, let's just do it here." Curtis got in the truck and Padron saw her talking to the driver. Padron then watched as Cottrell got out of the truck from the driver's side and approach his vehicle. Curtis stayed by the passenger side of the truck. At this point, Cottrell got in the passenger side of Padron's car, handed Padron the pill bottle, took the $350 cash from Padron, and walked back to his truck. The video camera in Padron's car recorded the interaction, during which Cottrell stated, "I don't usually meet people," and referred to Curtis as his "daughter." Cottrell returned to the truck, and Padron left the QuikTrip. After Padron left the QuikTrip, Curtis and Cottrell continued talking at the truck for 5 to 10 minutes.

Detective Padron contacted Curtis at later dates to attempt to purchase more oxycodone from her. Padron specifically asked Curtis to let him know when she had the oxycodone in her possession. In their text message exchange, Curtis told Padron that "[m]y dad wont [*sic*] lemme that cuz its [*sic*] his business I just bring in the clientel [*sic*] I handle customers only no money no merch." Despite later text message exchanges, no further deals were arranged between Curtis and Padron.

At trial, Cottrell testified he was completely unaware that the exchange in which he participated in Detective Padron's car was for illegal prescription narcotic drugs. He explained that Curtis had been living with his son before his son passed away. Cottrell testified he helped Curtis pay for household bills and food. He said Curtis called him on June 5, 2013, and told him she had $50 for him as a partial repayment. Based on what she said, he left the job site where he worked as a home remodeler and met Curtis at the

QuikTrip. Cottrell testified that when he arrived, Curtis told him if he wanted the money, he had to give Padron the pill bottle, which he said Curtis told him was called an "8 and 20." Cottrell said he was unaware of the nature of the transaction but completed it because he needed the money. He later conceded, however, that he did not keep any of the money from the transaction.

The jury unanimously found Cottrell guilty of distribution of hydrocodone, distribution of oxycodone, and conspiracy to commit distribution of a controlled substance. Cottrell filed a posttrial motion for a new trial, through which he renewed an earlier motion for judgment of acquittal, which challenged only the sufficiency of the evidence. The district court denied the motion for new trial or judgment of acquittal and sentenced Cottrell to 68 months in prison and 36 months' postrelease supervision.

ANALYSIS

1. *Unanimity*

Cottrell claims the district court erred in failing to give the jury a unanimity instruction on the conspiracy charge. To prove conspiracy, the State must establish (1) that the defendant entered into an agreement with another person to commit a crime or to assist in committing a crime and (2) that an overt act in furtherance of such conspiracy was committed by the defendant or a coconspirator. K.S.A. 2015 Supp. 21-5302(a). Relevant to the claim of error here, the district court provided the following instruction related to the overt acts alleged in this case to have been committed in furtherance of the conspiracy to distribute controlled substances:

> "A person may be convicted of a conspiracy only if some act in furtherance of the agreement is proved to have been committed. An act in furtherance of the agreement is any act knowingly committed by a member of the conspiracy in an effort to effect or accomplish an object or purpose of the conspiracy. The act itself need not be criminal in

6

nature. It must, however, be an act which follows and tends towards the accomplishment of the object of the conspiracy. The act may be committed by a conspirator alone and it is not necessary that the other conspirator be present at the time the act is committed. Proof of only one act is sufficient.

"The following is a list of the alleged acts in furtherance of the agreement to be considered:

"1.   JENNIFER M. CURTIS responded to Officer Padron's text inquiry with details on prices and where to go to conclude the sale of hydrocodone and oxycodone.

"2.   JENNIFER M. CURTIS contacted RONALD D. COTTRELL, JR., with the sales order she obtained from Officer Padron[] and had, RONALD D. COTTRELL, JR., appear at the designated time and place with the pills Officer Padron ordered.

"3.   RONALD D. COTTRELL, JR., went to the transaction site which JENNIFER M. CURTIS had brokered between Officer Padron and RONALD D. COTTRELL, JR.

"4.   JENNIFER M. CURTIS waited by RONALD D. COTTRELL, JR.'s vehicle while he went to Officer Padron's vehicle and conducted the exchange brokered by JENNIFER M. CURTIS.

"5.   JENNIFER M. CURTIS met with RONALD D. COTTRELL, JR. at his vehicle after the brokered transaction with Officer Padron was completed."

In support of his claim that the district court should have given the jury a unanimity instruction relating to this instruction, Cottrell argues:  (a) the State alleged five separate and distinct overt acts to support the conspiracy to distribute controlled substances charge, but the State failed to elect which specific act it was relying on before submitting the case to the jury and the court failed to instruct the jury it must unanimously agree on one specific overt act to support the conviction; and alternatively, (b) the district court instructed the jury on five alternative means of committing conspiracy to distribute controlled substances but the State failed to present sufficient evidence to prove each of these alternative means beyond a reasonable doubt. We address each of these arguments in turn.

7

a. *Multiple acts*

Because the State alleged several overt acts—and any one of the acts could have supported the conspiracy—Cottrell argues the State was required to elect the act upon which it relied to support the charge, and the district court was required to instruct the jury that it must be unanimous on which act the defendant committed. Cottrell contends that the court's failure to grant his request to provide the jury with a unanimity instruction for multiple acts is reversible error. But because multiple overt acts in furtherance of a conspiracy are not multiple acts under Kansas law, we find no error in the district court's decision to deny Cottrell's request for a unanimity instruction.

On appeal, this court reviews the denial of a unanimity instruction as follows:

"Unanimity instruction errors are reviewed under a three-part framework. First, the reviewing court determines whether a multiple acts case is presented. The threshold question is whether jurors heard evidence of multiple acts, each of which could have supported conviction on a charged crime. [Citation omitted.] This is a question of law subject to unlimited review. [Citation omitted.] If the case is a multiple acts case, the next question is whether error was committed. To avoid error, the State must have informed the jury which act to rely upon or the district court must have instructed the jury to agree on the specific act for each charge. Failure to elect or instruct is error. Finally, the court determines whether the error was reversible or harmless. [Citation omitted.]" *State v. De La Torre*, 300 Kan. 591, 596, 331 P.3d 815 (2014).

Therefore, we first must decide whether multiple acts were presented in this case. In a multiple acts case, the State alleges several factually and legally distinct acts, any one of which could constitute the crime charged. *State v. Soto*, 299 Kan. 102, 110, 322 P.3d 334 (2014). Incidents are factually separate when independent criminal acts have occurred at different times or different locations or when a criminal act is motivated by a fresh impulse. *De La Torre*, 300 Kan. at 598. The fundamental concern in multiple acts cases is the possibility that the jury may not unanimously agree on the same criminal act

8

underlying the single charge. See *State v. Voyles*, 284 Kan. 239, 248, 160 P.3d 794 (2007).

We begin by noting that a panel of this court previously has held that the allegation of several overt acts in furtherance of a conspiracy does not present a multiple acts case. See *State v. Enriquez*, 46 Kan. App. 2d 765, 775-76, 266 P.3d 579 (2011) (allegation of several overt acts in furtherance of conspiracy does not present multiple acts case because it is not necessary for overt acts in conspiracy case to be illegal or chargeable as crimes). Nevertheless, Cottrell argues some of the five overt acts occurred at different times and locations in his case; thus, they constitute multiple acts. That the overt acts alleged are factually distinct, however, does not make them multiple acts. In a conspiracy case, it is the agreement that is the crux of the offense. Thus, a single agreement to commit several crimes constitutes one conspiracy. By the same reasoning, multiple agreements to commit separate crimes constitute multiple conspiracies. Here, there was only one conspiracy alleged: the distribution of controlled substances. Because none of the overt acts charged in furtherance of that conspiracy are factually and legally sufficient to constitute a crime in and of themselves, there is no risk here that the jury could have found multiple conspiracies. See, *e.g.*, *State v. Zabrinas*, 271 Kan. 422, 439, 24 P.3d 77 (2001) (multiple acts must be "factually and legally sufficient to satisfy all of the elements of the crime").

Moreover, had the State charged Cottrell with multiple counts of conspiracy based on the overt acts, any convictions stemming from the charges would have been multiplicitous. See, *e.g.*, *State v. Williams*, 303 Kan. 750, 756, 368 P.3d 1065 (2016) ("Had the State charged Williams in multiple counts based on his single threat against multiple victims, any convictions stemming from the charges would have been multiplicitous. Williams made one threat and committed one crime; the Court of Appeals erred in identifying this case as one involving multiple acts."); *State v. Pham*, 281 Kan. 1227, Syl. ¶ 20, 136 P.3d 919 (2006) (conspiracy to commit kidnapping and conspiracy

9

to commit aggravated burglary were multiplicitous where only single continuing conspiracy, *i.e.*, one agreement to rob victims in their home). Because the facts of this case support only one conspiracy to distribute controlled substances, a multiple acts instruction would not have been proper.

b. *Alternative means*

Given the unique manner in which the issue of alternative means was raised on appeal here, we find it helpful to provide a brief procedural summary. At trial, defense counsel asked the district court to provide an instruction to the jury requiring it to agree on one specific overt act in order to convict on the charge of conspiracy to distribute controlled substances. The State opposed the request, arguing that *Enriquez*, 46 Kan. App. 2d at 775-76, stood for the legal proposition that providing the jury with a factual basis for two or more overt acts in furtherance of a conspiracy is not a multiple acts situation requiring a unanimity instruction but instead is a situation that presents the jury with alternative means of how the conspiracy was committed. As we know from the preceding section, the district court ultimately denied Cottrell's request for the unanimity instruction.

Based on the arguments in his brief, it appears Cottrell believes the district court's decision to deny his request for a unanimity instruction necessarily incorporated *Enriquez* and found, as a matter of law, that the five overt acts alleged here represented alternative means of committing the crime of conspiracy. Based on this belief, Cottrell argues the district court erroneously relied on *Enriquez* to find the State only had to present substantial evidence of each of the overt acts (alternative means) alleged instead of the higher standard of proof—beyond a reasonable doubt—of each of the overt acts alleged. Before addressing Cottrell's argument, we first must determine whether the five overt acts alleged here represent alternative means of committing the crime of conspiracy to distribute controlled substances.

Alternative means are the materially different ways of committing a particular crime based on the elements of the offense or the statutory definition. "When criminal statutes create two or more distinct ways of committing an offense, those ways reflect alternative means. Other criminal statutes establish only one way to commit an offense, although they may use synonymous or redundant terms to define the prohibited conduct." *State v. Schreiner*, 46 Kan. App. 2d 778, Syl. ¶ 1, 264 P.3d 1033 (2011). "'Whether a statute creates alternative means of committing a crime is a matter of statutory interpretation and construction and is a question of law subject to de novo review on appeal.' [Citation omitted.]" *State v. Castleberry*, 301 Kan. 170, 181, 339 P.3d 795 (2014).

Our Supreme Court established the framework for alternative means analysis in *State v. Brown*, 295 Kan. 181, 284 P.3d 977 (2012). *Brown* instructs us to look at the plain language of the statute first to determine whether the legislature intended to create alternative means of committing the crime. 295 Kan. at 193. The Kansas statute on conspiracy defines it as "an agreement with another person to commit a crime or to assist in committing a crime. No person may be convicted of a conspiracy unless an overt act in furtherance of such conspiracy is alleged and proved to have been committed by such person or by a co-conspirator." K.S.A. 2015 Supp. 21-5302(a). A plain reading of the language in the conspiracy statute reflects that the legislature did not intend to create more than one distinct way in which a defendant can commit an overt act. In fact, the statute does not even use synonymous or redundant terms to define various ways in which an "overt act" can be committed. The statute only requires that the State allege and then prove that the defendant or any coconspirator commit an overt act in furtherance of the conspiracy. Thus, the State can submit to the jury one factual circumstance to prove commission of an overt act or, as here, five distinct factual circumstances to prove that an overt act was committed. The essential element of the offense that must be proved is the commission of an overt act in furtherance of the conspiracy, which does not present an alternative means situation. If the legislature had intended to create more than one distinct

11

way in which a defendant can commit an overt act in furtherance of the conspiracy alleged, the legislature would have provided at least some language in the statute to carry out that objective. Again, there is no such language in the conspiracy statute.

For the reasons stated above, we hold overt acts presented to a jury that are alleged to have been committed in furtherance of one conspiracy under K.S.A. 2015 Supp. 21-5302(a) are not alternative means requiring jury unanimity; instead, presenting more than one overt act to the jury represents a preliminary factual issue for it to resolve: Did the State allege and prove that the defendant or a coconspirator committed an overt act in furtherance of the conspiracy alleged? See K.S.A. 2015 Supp. 21-5302(a) ("No person may be convicted of a conspiracy unless an overt act in furtherance of such conspiracy is alleged and proved to have been committed by such person or by a co-conspirator."). The statute requires nothing more.

We readily acknowledge that our decision today directly conflicts with the published decision from our court in *Enriquez.* 46 Kan. App. 2d at 776 (allegation of several overt acts in furtherance of conspiracy presents alternative means requiring jury unanimity on one overt act or finding that a rational trier of fact could have found beyond a reasonable doubt that each overt act included in the instructions occurred). But we are not bound by the decision of a previous panel of our court. *State v. Urban*, 291 Kan. 214, 223, 239 P.3d 837 (2010). "While we must carefully consider each precedent cited to us, we also must uphold our duty to correctly determine the law in each case that comes before us. In doing so, we sometimes find that we must respectfully disagree with the opinion of another panel." *Uhlmann v. Richardson*, 48 Kan. App. 2d 1, 13, 287 P.3d 287 (2012).

Because we have held overt acts presented to a jury that are alleged to have been committed in furtherance of one conspiracy under K.S.A. 2015 Supp. 21-5302(a) are not

12

alternative means requiring jury unanimity, it is unnecessary to address Cottrell's argument that the district court erred in conducting an alternative means analysis.

## 2. *Sufficiency of the evidence*

Cottrell next argues that the district court erred in denying his motion for directed verdict. Specifically, Cottrell argues that there was insufficient evidence to establish he made an agreement with another person to distribute controlled substances, which is the first element of his conviction of conspiracy. Cottrell also argues there was insufficient evidence to establish he had the requisite knowledge to support his conviction for distribution of controlled substances.

"When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. [Citation omitted.]" *State v. Remmert*, 298 Kan. 621, 629, 316 P.3d 154 (2014).

### a. *Conspiracy to commit drug distribution*

Cottrell claims the State did not present sufficient evidence of an agreement between him and Curtis, which is an essential element of the conspiracy charge. See K.S.A. 2015 Supp. 21-5302(a) (State must show defendant entered into agreement with another person to commit crime or assist in committing crime). In support of this claim, Cottrell contends there was no evidence of the content of any communications between him and Curtis, noting specifically that there were no text messages between Cottrell and Curtis produced. While Cottrell admitted that he spoke with Curtis by phone on the day of the incident, he reiterates the explanation in his trial testimony that he understood he went to QuikTrip to receive a partial payment of money Curtis owed him. Finally,

13

Cottrell argues the fact that police observed Curtis and Cottrell together is insufficient, on its own, to support the conclusion that they made an agreement to distribute controlled substances.

The existence of an agreement to commit conspiracy need not be proved directly but may be inferred from circumstantial evidence and "'sufficiently significant circumstances.'" See *State v. Sharp*, 289 Kan. 72, 104, 210 P.3d 590 (2009); see also *State v. Swafford*, 257 Kan. 1023, 1040, 897 P.2d 1027 (1995). As was discussed above, the State provided ample evidence for a rational factfinder to conclude that Cottrell and Curtis formed an agreement to distribute controlled substances. Both in setting up the initial prescription narcotics sale and after that deal, Curtis told Detective Padron that her father was the one who supplied the product to the customers she communicated with. At the time of the transaction, Curtis again told Padron that she was waiting for Cottrell to show up at the QuikTrip; when he did arrive, Cottrell met with Curtis before he got in Padron's vehicle and exchanged the pill bottle for cash. Finally, officers observed Cottrell talking with Curtis at his truck after the sale was completed. There is substantial evidence that Curtis and Cottrell formed an agreement to sell illegal narcotics to Padron.

b. *Distribution of a controlled substance*

The district court's jury instruction regarding the two counts of distribution of controlled substances required the jurors to find Cottrell acted "knowingly" in order to convict. Nevertheless, Cottrell argues there was insufficient evidence that he acted with the requisite knowledge. In support of his position, Cottrell cites only to his trial testimony stating that he was unaware of the nature of the transaction in which he participated. Cottrell testified at trial that he went to QuikTrip simply to accept a partial repayment that Curtis owed him. But when Cottrell arrived Curtis handed him a pill bottle, which she told him was an "8 and 20," and instructed him to get into Detective Padron's car and exchange the pill bottle for cash. He contends that the evidence is

insufficient to prove he knew exactly what was going on and therefore the jury could not have found he acted knowingly.

However, the jury also heard testimony from Detective Padron describing Cottrell's participation in the sale, saw photos and watched the video in which Cottrell exchanged the pill bottle for cash, and read the text messages between Curtis and Padron representing that Cottrell was the source of the pills and thus a knowledgeable participant in the transaction. The jury weighed the evidence and determined the credibility of the witnesses. The jury was not bound to accept any one party's version of the events described. Given the jury ultimately convicted Cottrell of distribution of oxycodone and hydrocodone, we presume the jury believed the State's evidence and thus had drawn from that conclusion all reasonable inferences favorable to the State. *State v. Raskie*, 293 Kan. 906, 920, 269 P.3d 1268 (2012). Cottrell essentially asks this court to reweigh the evidence and come to a different conclusion based on his version of the events. It is not the function of this court to reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Lowrance*, 298 Kan. 274, 296, 312 P.3d 328 (2013). The evidence, when viewed in the light most favorable to the prosecution, was sufficient for a rational juror to find Cottrell guilty of distribution of controlled substances beyond a reasonable doubt.

3. *Knowingly*

In his last argument on appeal, Cottrell argues for the first time that the district court erred in instructing the jury that the mens rea for the distribution of controlled substances charges was knowingly. Cottrell contends the jury was required under Kansas law to find that he acted intentionally and that the improper instruction is reversible error.

When a jury instruction issue is raised for the first time on appeal, the standard of review is whether the instruction is clearly erroneous. K.S.A. 2015 Supp. 22-3414(3);

15

*State v. Herbel*, 296 Kan. 1101, Syl. ¶ 7, 299 P.3d 292 (2013); *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012). To establish that an instruction is clearly erroneous, this court must first determine whether error was made. The party claiming error must demonstrate that the proposed instruction would have been both legally and factually appropriate, based on an unlimited review of the entire record. If this court determines that error was made, it must determine whether reversal is proper. The inquiry is whether this court is firmly convinced a jury would have reached a different verdict had the instruction been given. The burden is on the defendant to establish the degree of prejudice necessary for reversal. 295 Kan. at 515-16.

Unlawful distribution of a controlled substance, as defined in K.S.A. 2015 Supp. 21-5705, does not indicate the mental state required for the crime. The Kansas Criminal Code requires that, where the definition of a crime does not prescribe a mental state, it is nevertheless required unless the definition plainly dispenses with it. K.S.A. 2015 Supp. 21-5202(d). The parties each submitted proposed jury instructions and discussed the mental state requirement for the distribution charge at the jury instruction conference. The district court ultimately gave the following instruction based on PIK Crim. 4th 52.010: "As it relates to Distribution of a Controlled Substance, the State must prove the defendant committed the crimes knowingly. A defendant acts knowingly when the defendant is aware that his conduct was reasonably certain to cause the result complained about by the State."

Cottrell argues for the first time on appeal that the district court should have instructed the jury that the requisite mental state for distribution of a controlled substance was intentional, citing *State v. Hall*, No. 109,602, 2014 WL 3843085 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. 1015 (2015). He claims that the court's instruction of knowingly—a lesser mens rea requirement—was therefore in error because an essential element of the crime was not proved.

16

However, the *Hall* court did not hold that intentional was the required mental state for distribution of a controlled substance. That case actually stated that where the defendant agrees with a jury instruction on the record, the defendant invites error and may not later challenge that instruction. 2014 WL 3843085, at *5. There, Hall was charged with intentional distribution of hydrocodone. Based on the charge, Hall argued that the jury instruction for distribution—that conviction was proper if Hall acted "intentionally, knowingly, or recklessly"—was overbroad. 2014 WL 3843085, at *3, 5. This court looked to the discussion at the jury instruction conference and held that defense counsel agreed on the record to the broader instruction and therefore invited error:

> "At the court's instruction conference at the close of the evidence at trial, . . . the following exchange took place:
>
> > '[PROSECUTOR]: . . . [A]s to the distribution of a controlled substance, that PIK instruction is silent as to the express. Does not expressly state mental state. In my review of the revised PIK 4th edition is that when the instruction as to the specific crime is silent as to the culpable mental state, that all three mental states should be given. It can be proven either by reckless actions, knowing actions, or intentional actions.
> >
> > 'THE COURT: Okay. So we do have a conflict between the parties as to certainly [PIK Crim. 4th] 52.01[0]. The only one asking for or suggesting [PIK Crim. 4th] 52.300 was the State, and you are suggesting it needs to be the broader instruction that includes all three?
> >
> > '[PROSECUTOR]: It does as to the distribution of a controlled substance. . . .
> >
> > '[DEFENSE COUNSEL]: Your Honor, I wouldn't necessarily disagree with the characterization of the—of Count Two, the instruction regarding distribution. . . .'
>
> "After further discussion, . . . the court turned to Instruction No. 6, which dealt with the three culpable mental states for distribution of a controlled substance.
>
> > 'THE COURT: . . . And I believe, [Defense counsel], did you object to that? I believe you did.

17

'[DEFENSE COUNSEL]: I did not, actually, Your Honor.

'THE COURT: Okay. Do you think that's correct, then?

'[DEFENSE COUNSEL]: I think it is. . . .

'THE COURT: Okay.

. . . .

'THE COURT: . . . Number 6, then, is the State's proposal for distribution of controlled substance is intentionally, knowingly, or recklessly.'"

*Hall*, 2014 WL 3843085, at *4-5.

The *Hall* court therefore held that because Hall's counsel told the court the jury instruction was correct, he abandoned his earlier position that intentional was the appropriate mental state. 2014 WL 3843085, at *5. The court cited *State v. Peppers*, 294 Kan. 377, 393, 276 P.3d 148 (2012), which held that "a defendant cannot challenge an instruction, even as clearly erroneous under K.S.A. 22-3414(3), when there has been an on-the-record agreement to the wording of the instruction at trial." This is a proposition that has been long recited by our courts. See, *e.g.*, *State v. Miller*, 293 Kan. 535, 554, 264 P.3d 461 (2011) (party may not invite error and then complain of that error as ground for reversing); *State v. Bailey*, 292 Kan. 449, 459, 255 P.3d 19 (2011) (when district court gives defendant's requested instruction to jury, defendant cannot complain the requested instruction was error on appeal); *State v. Hargrove*, 48 Kan. App. 2d 522, 531, 293 P.3d 787 (2013) (party cannot complain about ruling it invited court to make and ask appellate court to reverse simply because party thinks differently on appeal).

Here, the record does not include Cottrell's requested jury instructions, but his attorney's comments at the jury instruction conference indicate that in his written submission, he requested that the mental state for distribution of a controlled substance be knowingly. The only contested issue at the conference was whether there should be a separate instruction defining all mental states, or whether the instructions should be targeted to the separate charges. Defense counsel argued for the latter position, requesting

18

that the conspiracy charge include the mental state intentionally and the distribution of a controlled substance include the mental state knowingly:

> "THE COURT: . . . What [defense counsel is] asking for, he's indicating that intentionally deals with conspiracy to commit, conspiracy to commit a distribution of a controlled substance, while knowingly deals with distribution of a controlled substance.
>
> . . . .
>
> "THE COURT: Well, [prosecutor] and [defense counsel], it would appear perhaps that the better language would be that a defendant acts knowingly when the defendant is aware his conduct was reasonably certain to cause the result complained about by the State. Do you object to that language?
>
> "[DEFENSE COUNSEL]: I don't object to that language, but I object to the fact it's not specifically targeted towards crimes that are—
>
> "THE COURT: Oh, if I—and I appreciate that. As it relates to distribution of a controlled substance, the State must prove that the defendant committed the crimes knowingly and then with that language.
>
> "[DEFENSE COUNSEL]: Right. I don't have an objection to that."

Cottrell not only appears to have submitted his written requested jury instructions including knowingly as the mental state for the distribution charge but also affirmatively asked the district court to issue that instruction at the jury instruction conference. Like in *Hall*, Cottrell may not invite the court to issue an instruction and then later challenge that instruction as erroneous. Thus, we find no error in the district court's jury instructions.

Affirmed.