NOT DESIGNATED FOR PUBLICATION

No. 121,864

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ORVILLE WILLIAM SIEG,
*Appellant*.


MEMORANDUM OPINION


Appeal from Leavenworth District Court; MICHAEL D. GIBBENS, judge. Opinion filed April 2, 2021. Reversed and remanded with directions.


*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.


*Shawn M. Boyd*, assistant county attorney, *Todd Thompson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before GREEN, P.J., MALONE and WARNER, JJ.


PER CURIAM: Orville William Sieg appeals his conviction for aggravated assault. He argues that the trial court made two jury instruction errors. First, he contends that the trial court erred by not including an instruction for the lesser included offense of assault. We disagree and affirm. Second, Sieg asserts that the trial court erred by not giving the jury a limiting instruction on prior crime evidence. Because the trial court did not limit the jury's consideration and use of prior crimes, we reverse and remand for a new trial.


In April 2017, a bounty hunter named Marlin Smith was driving around the city of Leavenworth looking for Sieg. Smith saw a white Chevy Impala which Smith knew was

1

related to Sieg in some way. A woman, later identified as Jennifer Moore, was driving. Smith could see Sieg lying in the back seat of the car. Smith followed the car until it parked. Smith parked behind it, blocking it in. Smith saw Moore walking away from the car.

Sieg testified that he was in the back of the car, trying to conceal himself, when he heard Smith say, "Get out of the car." Sieg testified that he saw Smith pointing a gun at him. Sieg said that he did not see Smith's badge or other indication that Smith worked for a bonding company. Sieg was not aware that he had missed a court date and did not know the details of his bail bond because his deceased wife had arranged the bail bond. Sieg testified that Smith called him by name. Sieg lied and said, "My name's not Orville; that's my brother." Sieg immediately jumped into the front seat of the car and drove off. Sieg testified that Smith came up and struck the car window. As Sieg was driving away, Smith shot at the car. A bullet fragment lodged into Sieg's left hip. Sieg testified that he went to a friend's house and passed out. When Sieg woke up, he was at the house of a medical doctor, who then treated Sieg's bullet wound. Sieg did not go to a hospital or call the police.

Smith testified that he was wearing street clothes when he walked up to the car and showed Sieg his badge. Smith asked Sieg if his name was Orville, and Sieg said no. Smith testified that he could see Sieg from the chest up and saw that Sieg pulled out a gun. When Smith saw the gun, he took a step back and drew his own gun, holding it to his side. Smith asked Sieg to get out of the car, but Sieg moved to the driver's seat instead. Smith went to the driver's door, tried to open it, then hit the window with his hand. Smith testified that Sieg started the car and then displayed a gun. When Smith saw the gun, he stepped back. The car started to pull away and Smith heard a gunshot. Smith fired three rounds at the car, aiming at the tires.

Smith returned to his truck, calling 911 as he went. When police arrived, Smith gave them permission to search his truck and take his gun. Police found one shell casing that matched Smith's gun, but no other shell casings.

Another officer found the Chevy Impala two days after the shooting. The officer, with the car owner's permission, photographed two bullet holes in the passenger side doors. Although the officer obtained consent to take photographs of the car, he never asked to search the interior of the car and thus, no weapon was recovered from the car and the State did not introduce any other forensic evidence of a gun being fired from within the car.

The driver and owner of the car, Jennifer Moore, testified that she saw Smith's truck when she walked away from the car. Moore has known Sieg since she was 17. She loves Sieg and was pregnant with his child when the shooting occurred. She said that Sieg did not have a gun and that there was no gun in her car. Sieg also testified that he did not have a gun because he had a felony record.

The State charged Sieg with aggravated assault, in violation of K.S.A. 2016 Supp. 21-5412(b)(1) (assault with a deadly weapon). The jury convicted Sieg as charged. The trial court sentenced Sieg to 32 months in prison, followed by 12 months of postrelease supervision.

Sieg timely appeals.

*Did the Trial Court Err by Refusing Sieg's Request for an Instruction on Assault?*

Sieg argues that the trial court committed reversible error by failing to give an instruction on the lesser included offense of assault. The State responds that an instruction on assault would have been legally appropriate, but not factually appropriate.

When the giving of or failure to give a lesser included offense instruction is challenged on appeal, appellate courts apply the analytical framework for jury instruction issues. The first step is determining whether the party preserved the issue. The second

3

step is determining the merits of whether an error occurred during the trial, and at this step, the appellate court exercises unlimited review to determine whether the instruction is legally and factually appropriate. The third step is whether the error—if there is one—requires reversal. The standard at this step depends on whether the instruction was requested in the trial court. If the defendant requested the instruction, the trial court's failure to give it is grounds for reversal unless the State shows that there is no reasonable probability the absence of error would have changed the jury's verdict. If the defendant did not request the instruction, the appellate court applies a clear error standard to assess whether it is firmly convinced that the jury would have reached a different verdict if the instruction error did not occur. The defendant has the burden to establish clear error, and appellate courts consider the entire record de novo to determine whether the defendant met this burden. See *State v. Gentry*, 310 Kan. 715, 720-21, 449 P.3d 429 (2019).

When evaluating whether a lesser included instruction is factually appropriate in an individual case, courts use the following test: "Is there some evidence when viewed in the light most favorable to the defendant that would allow a rational factfinder to find the defendant guilty of the lesser included offense?" *State v. McLinn*, 307 Kan. 307, 324-25, 409 P.3d 1 (2018); see K.S.A. 2020 Supp. 22-3414(3). See also *State v. Randle*, 311 Kan. 468, 472, 462 P.3d 624 (2020) (expressly disapproving of often-used statement from *State v. Fisher*, 304 Kan. 242, 258, 373 P.3d 781 [2016], that "'[i]f, after a review of all the evidence viewed *in the light most favorable to the prosecution*, we are convinced that a rational factfinder could have found the defendant guilty of the lesser crime, failure to give the instruction is error,'" as unsupported by caselaw).

At the close of evidence, Sieg requested a lesser included instruction for assault. On appeal, Sieg argues that the trial court erred in denying this request because aggravated assault includes all the elements of assault. Thus, by Sieg's reasoning, if the State presented sufficient evidence to show aggravated assault, then the facts also establish assault.

4

To show that the trial court erred in omitting the lesser included offense instruction, Sieg must show that the instruction was legally and factually appropriate. A lesser included offense must be a lesser degree of the same crime or a crime where all the elements of the lesser crime are identical to some of the elements of the crime charged. K.S.A. 2016 Supp. 21-5109(b). Assault is a lesser degree of aggravated assault and also all of the elements of assault are identical to some of the elements of aggravated assault. See K.S.A. 2016 Supp. 21-5412(a)-(b); *State v. Williams*, 220 Kan. 610, 611, 556 P.2d 184 (1976). An instruction for assault was legally appropriate.

But the trial court correctly determined that an instruction for assault was not factually appropriate. The instruction would only have been factually appropriate if there was some evidence which would reasonably justify a conviction of the lesser included crime. *McLinn*, 307 Kan. at 324-25. The trial court considered this point thoroughly at the jury instruction conference, stating the following,

> "I'm looking for any evidence of an assault, a simple assault. Do you know of any that I—I thought about it overnight, and I just don't know of any. Looks to me like it was either done with a firearm or it wasn't done at all, under the evidence I've heard."

Sieg offered the idea that Smith might have had a reasonable apprehension of bodily harm when Sieg started driving the car. Sieg suggested that Smith was close enough to the car that he may have thought the car would hit him. The trial court correctly decided that the evidence did not support Sieg's theory. Smith had testified that he only believed that Sieg would harm him when Sieg pointed the gun. The evidence showed that the car only moved away from Smith, not toward him. Thus, the evidence only supported a charge of aggravated assault for Sieg pointing a gun at Smith. Because an instruction on assault was not factually appropriate, Sieg's argument fails.

5

*Did the Trial Court Err by Failing to Give a Limiting Instruction on Prior Crime Evidence?*

Sieg argues that the trial court committed reversible error by failing to give a limiting instruction regarding prior crime evidence. The State argues that the instruction was not legally or factually appropriate or, alternatively, that omitting the instruction was harmless error. Because the trial court failed to mitigate the prejudicial effects of prior crime evidence, this court should reverse and remand.

A defendant can challenge the lack of a K.S.A. 2016 Supp. 60-455(b) limiting instruction as clearly erroneous even if the defendant did not object to the admission of the other crimes evidence at trial. See *State v. Breeden*, 297 Kan. 567, 579-80, 304 P.3d 660 (2013). In evaluating whether an instruction rises to the level of clear error, the issue of "[r]eversibility is subject to unlimited review and is based on the entire record. It is the defendant's burden to establish clear error under K.S.A. 22-3414(3) [Citation omitted.]" *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014).

To establish clear error, "'the defendant must firmly convince the appellate court that the giving of the instruction would have made a difference in the verdict.' [Citation omitted.]" *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016). The clear error determination must review the impact of the erroneous instruction in light of the entire record including the other instructions, counsel's arguments, and whether the evidence is overwhelming. *In re Care & Treatment of Thomas*, 301 Kan. 841, 849, 348 P.3d 576 (2015).

Sieg did not request a limiting instruction on prior crime evidence or object to its omission. Thus, this court reviews the jury instructions for clear error. Under K.S.A. 2016 Supp. 60-455(a), evidence that a person committed a crime on some other occasion is inadmissible to prove that the person has a criminal disposition and has committed this crime. If evidence of a prior crime is admitted for a different purpose, the trial court must

give a limiting instruction informing the jury of the specific reason that evidence was admitted. *State v. Gunby*, 282 Kan. 39, 48, 144 P.3d 647 (2006).

Sieg contends that the jury heard two instances of prior crimes which together were prejudicial enough to affect the jury's verdict. First, the State presented information that Sieg had failed to appear in court as required under the terms of his bail bond. Second, Sieg testified that he did not have a gun when he met Smith. And to bolster the credibility of his previous statement, Sieg stated: Because he was a convicted felon, he was legally precluded from possessing a firearm. Thus, he did not want to risk being convicted as a felon in possession of a firearm and being sentenced to prison. Sieg correctly argues that the introduction of these two facts into evidence obligated the trial court to give a limiting instruction. See *Breeden*, 297 Kan. at 581.

The State notes that Sieg himself brought up his felony record, with no further information about any convictions. The State argues that, therefore, a limiting instruction would not have been factually appropriate on this prior crime evidence. But the need for a limiting instruction on prior crime evidence does not depend on which party introduces the evidence. *State v. Molina*, 299 Kan. 651, 660, 325 P.3d 1142 (2014). Our Supreme Court's statement in *Breeden* instructs trial courts without caveats: "[A] trial court judge who admits K.S.A. 2012 Supp. 60-455(b) evidence must give a limiting instruction informing the jury of the specific purpose for admission of the evidence to avoid error." 297 Kan. at 579. Thus, the obligation of the trial court does not change based on which party introduces the evidence. *Molina*, 299 Kan. at 660.

Sieg has the burden of showing that the error of omitting the limiting instruction is reversible error. Other Kansas appellate decisions suggest that a defendant will not meet this burden when the evidence against the defendant is overwhelming. See *Gunby*, 282 Kan. at 59; *Molina*, 299 Kan. at 659; *State v. Enriquez*, 46 Kan. App. 2d 765, 770-71, 266 P.3d 579 (2011). For example, in *Enriquez*, Rodolfo Enriquez was convicted of conspiracy to commit first-degree murder and possession of cocaine. The police found

7

Enriquez and cocaine in the same motel room, and they found bullets in the pockets of his coat. On top of the physical evidence, Enriquez' three coconspirators testified that Enriquez asked them to help kill the intended victim. This court ruled that the evidence against Enriquez was so overwhelming that it was not likely that the verdict would have been different if the court had given a limiting instruction. In *Enriquez*, the presence of physical evidence and the corroborating testimony of multiple witnesses made the error harmless.

But this case is unlike *Enriquez* because Sieg contends that he did not have a gun, and police never found a gun or any shell casings other than Smith's. The only evidence that Sieg had a gun was the testimony of Smith, making this case much more like *State v. Berney*, 51 Kan. App. 2d 719, 725-26, 353 P.3d 1165 (2015). In *Berney*, a jury convicted Jeramie Berney of theft. The theft charge stemmed from allegations that Berney took a tip jar from a bar where Jo Ann Standifer worked as a bartender. Berney testified that he took the tip jar with Standifer's permission. Standifer, however, testified that she did not give Berney permission to take the tip jar. Surveillance video showed that Berney took the tip jar, but not why. A detective testified that he had found Berney's photo by looking for mugshots in the "mug system," suggesting to jurors that Berney had previous arrests or convictions. This court ruled that the trial was a credibility contest and the surveillance video did nothing to disprove Berney's defense. Based on those facts, this court was firmly convinced that the jury would have reached a different verdict had it been given the limiting instruction that the trial court was required to give. 51 Kan. App. 2d at 726.

Just as in *Berney*, this case is also a credibility contest. The prior crime evidence here was slightly stronger and, thus, more prejudicial than in *Berney*. In *Berney*, the jury knew only that Berney's mugshot was available to police, with some testimony that mugshots coincide with arrests. The jury was not told what Berney was arrested for or charged with. Here, the jury knew that Sieg was on bail, meaning he had been arrested, charged with a crime, and released for appearance in court on another day. The jury was not told what Sieg was arrested for or charged with.

In explaining why Sieg would not carry a gun, both Sieg and Moore testified that Sieg was a convicted felon. No one provided the jury with any further details about Sieg's prior felony conviction or convictions. The only evidence that Sieg had a gun was Smith's testimony that he saw a gun. Smith testified that Sieg fired a shot, but the only shell casing found by police was from Smith's own gun. No physical evidence showed that Sieg even had a gun, let alone displayed or fired it.

The jury here did not hear or see any independent corroborating evidence to suggest that Sieg had produced a gun and pointed it or fired it at Smith. The evidence at trial amounted to a "credibility contest" between Smith's testimony that there was a gun and Sieg and Moore's testimonies that there was no gun. Without other strong evidence of Sieg's guilt, the evidence of Sieg's prior crimes looms large. The full trial record convincingly shows that the jury would have reached a different verdict had the jury been given the limiting instruction that the trial court was required to give.

The trial court had a duty to give an instruction limiting the jury's consideration of prior bad act evidence. In this case, the trial court's failure to give the instruction was not harmless.

For the preceding reasons, we reverse and remand for a new trial.

Reversed and remanded with directions.

9