NOT DESIGNATED FOR PUBLICATION

No. 114,191

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MARY ANN GARRETT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Butler District Court; DAVID A. RICKE, judge. Opinion filed May 26, 2017. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Cheryl M. Pierce*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., MALONE and GARDNER, JJ.

*Per Curiam*:  Mary Ann Garrett appeals from a jury verdict that found her guilty of child abuse and interference with law enforcement. She challenges the jury instructions, the prosecutor's conduct, the sufficiency of the evidence, and her sentence. Finding no reversible error, we affirm.

*Factual and procedural history*

On October 27, 2014, Garrett brought 2-1/2-year-old C.C. into an emergency room. C.C. was wearing only a diaper and his legs had been severely burned. Garrett told

1

the emergency room nurse that she was C.C.'s babysitter and that she had left him in the bathroom with another little girl so they could use the potty chairs while she went to get pull-ups from another room. She heard screaming and when she got back into the bathroom she discovered that the little girl had turned the water on in the bathtub and was spraying C.C. with it. She pulled C.C.'s pants off, and his skin fell off with them. C.C. had sustained deep second-degree burns and was transferred to a burn specialist in Wichita.

Law enforcement investigated the incident and tested Garrett's water temperature. Garrett told law enforcement that H.B., her 3-year-old granddaughter, whom Garrett also babysat, had sprayed C.C. while Garrett was out of the room. She told them C.C. had been using a potty chair in the bathtub when H.B. sprayed him and that he had his pants down around his ankles and his socks on.

Garrett later went for an interview at the police station and admitted that she had sprayed C.C. with hot water. She stated that when she took him to use the toilet, he had diarrhea all over his pants and running down his legs, so she put him in the bathtub to spray him off with the detachable hose shower head. She sprayed him off, and he said it was hot, so she turned the knob down and continued spraying him. She then noticed that he had been burned so she left him in the bathtub to go change the diaper of another child she was watching when she heard C.C. yelling. She went back in and H.B. was spraying him with the water, but the water was not hot then. Garrett was arrested and charged with one count each of child abuse and interference with law enforcement.

Many witnesses testified at the jury trial. The State's witnesses included C.C.'s mother (H.C.), Ashley Greer (a registered nurse who worked in the emergency room when C.C. was brought in), J. Elizabeth Heflin, M.D. (a physician and a pediatric hospitalist with the Via Christi Clinic in Wichita, who testified as an expert witness in the area of pediatrics), Detective Robert Albert from the Butler County Sheriff's Office (the

2

investigator who took the initial information in this case from the El Dorado Police Department), Detective Monty Hughey of the Butler County Sheriff's Office (who interviewed Garrett four times during his investigation), Patricia Brown (H.B.'s mother and Garrett's ex-daughter-in-law who lived with Garrett), Chad Young (Chief Deputy of the El Dorado Police Department, who interviewed Garrett twice), and Garrett herself. We find it unnecessary for purposes of resolving the issues on appeal to set forth their testimony here. We note only that Brown testified that one day around the time that officers were coming to check the water temperature, she overheard Garrett telling H.B., Brown's daughter, "Do you remember what you're going to tell the detective, that you burned [C.C.]?" Brown contacted officers after Garrett was arrested and related this conversation.

Garrett testified on her own behalf. We set forth her testimony at length. She stated that back on October 27, 2014, she was babysitting C.C. and other children. She was getting ready to do what she called an hour of down time, so she put H.B. in her bed— a crib with sides—and took C.C. to the bathroom. Garrett testified that H.B. was able to climb out of her crib and did so frequently. When she pulled down C.C.'s pants, she saw that he had diarrhea. It had gone all down his legs and was in his pants, so she took off his pants and put him in the shower to rinse him off. He was wearing socks and they were saturated with diarrhea, but she left them on him.

Garrett said that she had been washing dresses in the bathtub about 30 minutes earlier using water which she had turned all the way to hot. The shower head was detachable and connected by a flexible hose that connected at the top of the shower head. It had an on/off switch and a hot/cold nozzle. She said that when she turned on the water, C.C. said, "[H]ot, hot" and backed up a little, so she turned the knob down. She finished rinsing him off, and he quit complaining that the water was hot. She did not know how long she sprayed him.

3

After she rinsed him off, she heard her grandson, so she went to check on him and decided to change his diaper, leaving C.C. standing in the bathtub. She then heard screaming and went back into the bathroom. H.B. had come into the bathroom and was spraying the front of C.C., who was still standing in the bathtub. She did not feel the water but immediately turned it off and picked up C.C. because she could see that he was red and blistering. She put him on the couch and put his diaper on loosely, then she loaded two other children in the car and headed to the emergency room.

Garrett testified that she was not punishing or disciplining C.C. in any way the day he was injured. She would not punish a child for having a poopy diaper. She testified that when she turned the water on to rinse C.C. off, she did not intend for it to be as hot as it turned out to be. She intended to spray C.C., but she did not intend to spray him with water that would burn him.

Garrett testified that she initially told the hospital personnel only that she had rinsed C.C. off after finding he had diarrhea. She testified she told the first officer she spoke to, Detective Hughey, the same thing, adding that H.B. had also sprayed him after she went in to change her grandson. She testified that she told that version to Deputy Young as well.

On cross-examination, Garrett admitted that when she took C.C. to the hospital, she did not tell law enforcement exactly what had happened because she was scared. She testified that she did not remember telling Detective Hughey that C.C.'s skin was red when she took him out of the shower or that he was shaking. She did not remember telling Detective Hughey that the skin came off C.C.'s lower extremities. She testified that although H.B. was spraying C.C., H.B. did not get wet.

Garrett testified that she had told the police what happened. The prosecutor asked, "At first?" Garrett responded, "I told them. I left some stuff out, yes. But I did tell them."

4

The prosecutor asked what she left out. She said that she "made it [to] where [H.B.] had sprayed him first instead of me." She reiterated that she sprayed C.C. first and then H.B. sprayed him later. She admitted that was not what she initially told law enforcement, stating she was not thinking straight at the time. She knew what she told law enforcement was not true. She did not recall having told Detective Hughey that the reason she had blamed H.B., her granddaughter, was so she (Garrett) would not get in trouble. She understood that law enforcement would talk to her granddaughter, and they did so. Garrett presented no further evidence.

The jury found Garrett guilty of child abuse and interference with law enforcement, and the district court subsequently sentenced her to 58 months of imprisonment. Garrett timely filed a notice of appeal.

*Was it clearly erroneous for the district court not to give a mental culpability instruction on the interference with law enforcement charge?*

Garrett first argues that the district court committed clear error by failing to give the jury an instruction defining the mental culpability necessary for the charge of interference with law enforcement.

Our standard of review when addressing challenges to jury instructions follows:

> "'(1) First, the appellate court should consider the reviewability of the issue from both
> jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2)
> next, the court should use an unlimited review to determine whether the instruction was
> legally appropriate; (3) then, the court should determine whether there was sufficient
> evidence, viewed in the light most favorable to the defendant or the requesting party, that
> would have supported the instruction; and (4) finally, if the district court erred, the
> appellate court must determine whether the error was harmless, utilizing the test and
> degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert.*

5

*denied* 565 U.S. 1221 (2012).' [Citation omitted.]" *State v. Woods*, 301 Kan. 852, 876, 348 P.3d 583 (2015).

Garrett's argument fails under the first step of this analysis. Although a defendant may challenge a jury instruction for the first time on appeal, when the defendant agrees with a jury instruction on the record, the defendant invites error and may not later challenge that instruction. *State v. Peppers*, 294 Kan. 377, 393, 276 P.3d 148 (2012).

Such is the case here. During the instruction conference, the district court specifically asked counsel whether it should give a culpable mental state instruction with this charge. Counsel discussed which option of the definition of *knowingly* from PIK Crim. 4th 52.010 they should give. The State initially argued that all three options be given. Defense counsel objected to the first and second options being given. The district court then determined that it would give only the third option.

But when the court went back through the agreed-upon instructions, it told counsel it had not included a specific culpable mental state instruction for the charge of interference with law enforcement. The court also told counsel that the mental culpability instruction on the child abuse charge would not necessarily address mental culpability for this charge. The parties discussed this matter at length, then agreed that the elements themselves described the necessary culpable mental state for this charge.

The discussion ended with the following concession by defense counsel:

> "[DEFENSE COUNSEL]: . . . In fact, as [the prosecutor] noted, which one do you pick? Because you have a second element which [says] knowledge of the information was false. Knew the information was false. And then the very next element is, intended to impede or obstruct. So I don't even know which one you would use even if we were going to instruct as to a culpable mental state. It was creating more confusion than we solve.

6

. . . .

"And, of course, under the culpable mental state statute, the intentional statutes are the one[s] that are considered to be specific intent offenses.

"[PROSECUTOR]: And it's already there.

"[DEFENSE COUNSEL]: It's already there.

"THE COURT: Counsel, I'm included to leave it like it is.

"[DEFENSE COUNSEL]: Yeah. I have no objection to that, Judge."

Here, as in *Peppers*, Garrett cannot invite the court to fail to give an instruction and then later challenge that failure as erroneous. Accordingly, we find that any error in the district court's jury instructions was invited. See *State v. Cottrell*, 53 Kan. App. 2d 425, 439-40, 350 P.3d 44 (2017) (finding no error where defendant requested *knowingly* jury instruction and asked for it at the instruction conference and then argued on appeal that *intentional* instruction should have been given), *petition for rev. filed* February 15, 2017; *State v. Hall*, No. 109,602, 2014 WL 3843085, at *5 (Kan. App. 2014) (unpublished opinion) (same), *rev. denied* 302 Kan. 1015 (2015).

But even if Garrett did not invite the error and merely acquiesced in it, no basis for reversal is shown. Because Garrett's counsel did not object to the instruction at trial, she must now show that the district court's failure to define the terms is clearly erroneous. See K.S.A. 2016 Supp. 22-3414(3); *State v. Potts*, 304 Kan. 687, 701-02, 374 P.3d 639 (2016). To establish clear error, "'the defendant must firmly convince the appellate court that the giving of the instruction would have made a difference in the verdict.' [Citation omitted.]" *State v. Walker*, 304 Kan. 441, 446, 372 P.3d 1147 (2016).

A district court is not required to define a legal term in the jury instructions when the common lay definition of the term does not differ from its legal definition, as we determined in *State v. Hanks*, No. 114,640, 2016 WL 4585620, at *3 (Kan. App. 2016) (unpublished opinion):

"The fact that the court's instructions used the words 'intent' and 'knowingly' without defining them does not render the instructions defective. In general, jurors are 'expected to decipher many difficult phrases without receiving specific definitions.' *State v. Robinson*, 261 Kan. 865, 877, 934 P.2d 38 (1997). The trial court should define words in an instruction only if the instructions as a whole would otherwise mislead the jury or cause it to speculate. *State v. Armstrong*, 299 Kan. 405, 440, 324 P.3d 1052 (2014). The trial court is not required to define for the jury widely used words or those readily comprehensible by individuals of common intelligence. 299 Kan. at 440; *State v. Roberts-Reid*, 238 Kan. 788, 789, 714 P.2d 971 (1986). The test to determine if the trial court is required to define a legal term in the jury instructions rests on whether the common lay definition of the term differs from the legal definition of the term. *State v. Patton*, 33 Kan. App. 2d 391, 397, 102 P.3d 1195 (2004), *rev. denied* 279 Kan. 1009 (2005)."

The legislature's definitions of the terms "knowingly" and "with intent" found in K.S.A. 2016 Supp. 21-5202 do not differ from the dictionary definitions of those words or from how those words are used by nonlawyers in everyday conversations. See Webster's II New College Dictionary 576, 926 (2005). Therefore, those terms do not need to be defined in the instructions. Further, no evidence suggests that the jury was misled or forced to speculate about the meaning of those terms. Thus, Garrett has failed to show that defining these terms would have made any difference in the outcome of the case.

*Did the prosecutor's conduct during the trial amount to reversible error?*

Garrett next argues the prosecutor committed reversible error during her redirect examination of Brown and her comments during closing argument. We review claims of prosecutorial misconduct based on nonevidentiary comments made during voir dire, opening statements, or closing argument even when a contemporaneous objection was not made at the trial level. *State v. Anderson*, 294 Kan. 450, 461, 276 P.3d 200 (2012). But a contemporaneous objection must be made to all evidentiary claims—including questions posed by a prosecutor and responses to those questions—to preserve the issue

for appellate review. *State v. Raskie*, 293 Kan. 906, 914, 269 P.3d 1268 (2012). Defense counsel objected to the prosecutor's conduct during redirect examination of Brown; thus, we consider each of Garrett's arguments.

We note that the Kansas Supreme Court has established a new framework for reviewing prosecutors' behavior. *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016), overruled portions of the former prosecutorial misconduct standard stated in *State v. Tosh*, 278 Kan. 83, 91 P.3d 1204 (2004). We now review not for prosecutorial misconduct, but for prosecutorial error. See *State v. Kleypas*, 305 Kan. 224, 314-15, 382 P.3d 373 (2016). Garrett filed her brief on August 30, 2016, before *Sherman* was decided, but the State filed its brief after the *Sherman* decision. Regardless of which test applies here, we find that Garrett has failed to show reversible error and that the result would be the same under either test. See *State v. Netherland*, 305 Kan. 167, 181, 379 P.3d 1117 (2016); *State v. Carter*, 305 Kan. 139, 148, 380 P.3d 189 (2016).

Appellate review of an allegation of prosecutorial error requires a two-step analysis. First, the court determines whether the prosecutor's comments were outside the wide latitude that the prosecutor is allowed in discussing the evidence. This analysis is the same under both the old and new frameworks. See *Kleypas*, 305 Kan. at 316. If we find prosecutorial error, the second step of the analysis under the old framework is to determine whether the comments prejudiced the jury against the defendant and denied the defendant a fair trial. In making this determination, the "appellate court considers three factors: (1) whether the misconduct was gross and flagrant, (2) whether it was motivated by prosecutorial ill will, and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors." 305 Kan. at 314. This three-factor test is not used in the second step of the new *Sherman* framework. Instead, "the prejudice analysis will focus on whether the error prejudiced the defendant's due process rights to a fair trial; if a due process violation occurs, prejudice will be assessed by applying the *Chapman* constitutional error

9

standard." 305 Kan. at 316; see *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).

*Questions During Redirect Examination of Brown*

Garrett first argues that the prosecutor erred when she repeatedly asked Brown on redirect examination whether she had any concerns about how Garrett treated C.C. Brown was Garrett's ex-daughter-in-law and the mother of Garrett's grandchildren. Garrett focuses on the following colloquy:

"[PROSECUTOR]: [Defense counsel] asked you about [if] you had no concerns about punishing her—her punishing your kids. Your kids are related to her, correct?

"[BROWN]: Yes.

"[PROSECUTOR]: Did you have any concerns about her punishing the other kids?

"[DEFENSE COUNSEL]: Objection as to relevance. And—

"[PROSECUTOR]: He opened the door, Your Honor.

"[DEFENSE COUNSEL: —it's outside the scope.

"[PROSECUTOR]: About how it is that she treated the children.

"THE COURT: The objection is sustained.

"[PROSECUTOR]: Did you ever have any concerns about the way she treated [your 1-year-old son]?

"[BROWN]: No.

"[PROSECUTOR]: Not [your son] — [C.C.]?

"[BROWN]: At times.

"[DEFENSE COUNSEL]: Objection, Your Honor. We've discussed this previous to trial.

"THE COURT: Again the objection is sustained, counsel.

"[PROSECUTOR]: Thank you, Your Honor.

"[PROSECUTOR]: What times?

"[DEFENSE COUNSEL]: Objection, Your Honor. Unless we know where this is going, and pursuant to—

10

"THE COURT: Court agrees with defense counsel.

"[PROSECUTOR]: Do you have a specific incident in your mind that caused you concern[] about the way [Garrett] treat[ed] [C.C.]?

"[DEFENSE COUNSEL]: Judge, renew the objection.

"THE COURT: Objection again is sustained, counsel. Go to a different line of questioning."

Brown then testified that all of the children Garrett babysat except C.C. were related to Garrett.

A prosecutor errs when he or she asks improper questions during the evidentiary portion of trial. Improper questions are questions that are generally leading and suggestive or that assume facts not in evidence. See *State v. Richmond*, 289 Kan. 419, 444-45, 212 P.3d 165 (2009) (finding prosecutor erred in repeatedly asking objectionable questions and moving to the harmless error test after finding "questions were generally leading and suggestive or assuming facts not in evidence"). Proper questions are questions that are "relevant and supported by a good faith basis for believing the asserted matter to be true." *State v. Baker*, 281 Kan. 997, 1010, 135 P.3d 1098 (2006).

Garrett argues that the questions concerned prior bad acts, but the State could not admit such evidence because it had not filed a request to admit the evidence under K.S.A. 60-455. We do not address this latter argument, since the district court sustained the objection and no prior bad acts were admitted.

Garrett also argues that the line of questioning exceeded the scope of cross-examination. Immediately before the prosecutor asked Brown whether she had any concerns about Garrett punishing any of the other kids, defense counsel had asked Brown if she had any concerns about Garrett inappropriately punishing or abusing her own kids. Therefore, the prosecutor had a good-faith belief that defense counsel had opened the door to ask the question. When "a defendant opens an otherwise inadmissible area of

11

evidence during the examination of witnesses, the prosecution may then present evidence in that formerly forbidden sphere." *State v. Johnson*, 258 Kan. 475, 481, 905 P.2d 94 (1995). The questions have not been shown to have violated an in limine ruling. Although an in limine order was made, it was not recorded, is not included in the record, and does not appear, from the parties' statements about its scope, to have prohibited the specific questions the prosecutor asked.

The prosecutor's second question—after the district court sustained defense counsel's objection based on relevance and outside the scope—was different from her initial question. This time she asked if Brown ever had concerns about the way Garrett treated C.C., so the question was not necessarily in bad faith. In fact, each of the objected-to questions was different and appeared to be attempts by the prosecutor to rephrase the question. However, the last two questions are more problematic because the third question asked about the partial answer Brown gave before defense counsel was able to object to the question. And the fourth question was similar to the other questions that had already been ruled to be improper.

Nevertheless, the prosecutor's actions were not gross and flagrant or based on ill will. Comments generally amount to gross and flagrant misconduct when they were repeated, emphasized, calculated, or in violation of well-established laws." *State v. Barber*, 302 Kan. 367, 380, 353 P.3d 1108 (2015). "In analyzing ill will, this court considers whether the comments were 'deliberate or in apparent indifference to a court's ruling.'" 302 Kan. at 380. Here, the prosecutor appeared to be attempting to rephrase the question in response to the court sustaining the objections, and when the district court told her to go to a different line of questioning, she did.

We also consider whether the evidence against Garrett was so direct and overwhelming that the misconduct would have had little weight in the minds of jurors. See *State v. Williams*, 299 Kan. 509, 540, 324 P.3d 1078 (2014), *overruled on other*

*grounds in State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016). We believe that the prosecutor's conduct had negligible, if any impact, on Garrett's jury. Brown did not actually answer Garrett's questions, and the district court sustained the objection to the answer—"At times"—that Brown did give. Considering harmlessness under the more demanding federal constitutional standard, we find that the State has demonstrated beyond a reasonable doubt that any error did not affect the outcome of the trial in light of the entire record. See *State v. Fisher*, 304 Kan. 242, 255-56, 373 P.3d 781 (2016); *Williams*, 299 Kan. at 541.

*Closing Argument*

Garrett next argues that the prosecutor committed misconduct during closing argument by (1) making comments designed to inflame the passion and prejudice of the jury; (2) arguing facts that were not in evidence; and (3) commenting on Garrett's credibility. We first determine whether any of the challenged statements "fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." *Sherman*, 305 Kan. at 109.

The first comment Garrett complains about was in the prosecutor's last statement to the jury in the initial part of her closing argument. The prosecutor stated:

> "And I'm asking that you find her guilty of interference with a law enforcement officer. Because she not only lied—or she was not only untruthful to law enforcement officers. Not only did she abuse [C.C.], but stole a little bit of [H.B.]'s innocence as well that day. Thank you, ladies and gentlemen."

"A prosecutor should not make statements intended to inflame the passions or prejudices of the jury or to divert the jury from its duty to decide the case based on the evidence and the controlling law. [Citation omitted.]" *Tosh*, 278 Kan. at 90. Jurors must

13

decide a case on evidence and controlling law and cannot decide a case based on sympathy, emotion, or prejudice. A prosecutor, therefore, "has a duty to refrain from making improper, leading, inflammatory, or irrelevant statements to the jury and 'must guard against appeals to jurors' sympathies or prejudices.'" *State v. Holt*, 300 Kan. 985, 992, 336 P.3d 312 (2014).

We find no error in this statement because it drew a reasonable inference from the evidence. *Fisher*, 304 Kan. at 252 (finding the prosecutor has considerable latitude when discussing the evidence and may draw reasonable inferences from it). Garrett had told H.B., her granddaughter, to tell police that she had sprayed C.C. with water, which was not true. Garrett did so, understanding that law enforcement would talk to her 3-year-old granddaughter, and they did so. Placing the blame on a child, then placing that child in the position of telling the truth or instead telling police what her grandmother told her to tell the police is reasonably characterized as stealing a little bit of the child's innocence. This comment did not play to the jurors' sympathies, was not gross and flagrant, and was not based on ill will.

Next, Garrett argues that the prosecutor committed error by arguing facts not established by the evidence. During closing arguments, the prosecutor must confine his or her remarks to matters in evidence. Moreover, the prosecutor's comments must accurately reflect the evidence and the law and should not be intended to inflame the jury's passions or prejudices or divert the jury from its duty to decide the case based on the evidence and controlling law. *Fisher*, 304 Kan. at 252. The prosecutor nevertheless has considerable latitude when discussing the evidence and may draw reasonable inferences from it. 304 Kan. at 252.

Garrett challenges this statement: "And that instead when [C.C.] was ill and he had diarrhea he was sprayed according to the defendant with blistering hot water for pottying in his diaper." She argues that the prosecutor erred by attributing this statement to

14

Garrett, who denies ever having made this statement. Instead, Garrett contends that "she testified that she sprayed him with water of a normal temperature and then found her granddaughter spraying him with hot water." Nevertheless, Garrett had also testified during trial that when she sprayed C.C., he said, "[H]ot, hot " and backed up a little, so she turned the knob down. She did not testify that she sprayed him with "water of a normal temperature" as she alleges on appeal. And she never testified that the water H.B. sprayed on C.C. was hot. We find no misstatement of the facts.

Next, Garrett argues that the prosecutor misstated the facts by repeatedly saying that Garrett knew the water was hot, when there was no evidence of her knowledge. But Garrett admitted that she had used the hottest water possible to wash some clothes in the same tub 30 minutes earlier and that C.C. said the water was hot when she turned the water on him. The prosecutor may rely on circumstantial evidence and has considerable latitude when discussing the evidence and may draw reasonable inferences from it. *Fisher*, 304 Kan. at 252.

Here, we also have direct evidence of Garrett's knowledge. Chad Young, Chief Deputy of the El Dorado Police Department, interviewed Garrett on December 29, 2014, after giving her *Miranda* warnings. Garrett initially told law enforcement that she had left C.C. and another child in the bathroom while she changed a third child. She then heard screaming, so she went back into the bathroom and discovered that the other child was spraying C.C. with a shower extension. During Garrett's second statement, however, Garrett told him that C.C. had soiled himself and that she had sprayed him down with a shower to clean him. She stated that the water was hot and he was yelling, "[H]ot, hot." She told Young that she knew the water was hot. He asked her why she did not tell officers what had actually happened until then, and she did not really respond. She just said that she sprayed C.C. because he soiled himself. We thus find no erroneous misstatement of facts relating to Garrett's knowledge.

15

Garrett next contends that the prosecutor misstated facts by arguing that C.C. was standing outside, instead of inside, the tub when H.B. sprayed him. The transcript shows that Garrett's trial testimony was inconsistent on this point. On cross-examination, the prosecutor asked Garrett if she said that she turned the water off when she took C.C. out of the shower, and she answered, "Yes." The prosecutor asked if she left him in the bathroom, and she answered, "Yes." The prosecutor asked if C.C. was on the bathroom *floor* when H.B. came in, and Garrett answered, "Yes." On redirect examination, defense counsel asked Garrett to clarify where C.C. was and she testified that he was in the bathtub when she sprayed him, she left him in the bathtub when she left to go change her grandson's diaper, and he was still in the bathtub when she came back in and H.B. was spraying him. Based on the inconsistent testimony, we find no error in the prosecutor's argument that C.C. was on the floor of the bathroom.

Finally, Garrett argues that the prosecutor erred during closing argument by giving her personal opinion on Garrett's credibility. "[A] 'prosecutor may not state his or her personal belief as to the reliability or credibility of testimony given at a criminal trial.' [Citations omitted.]" *State v. Sprague*, 303 Kan. 418, 428, 362 P.3d 828 (2015).

> "It is improper for a prosecutor to offer his or her personal opinion as to the credibility of a witness, including the defendant. [Citations omitted.] The reason is because "'such comments are 'unsworn, unchecked testimony, not commentary on the evidence of the case.'"' [Citations omitted.] A prosecutor, however, 'may explain the legitimate factors which a jury may consider in assessing witness credibility and may argue why the factors present in the current case should lead to a compelling inference of truthfulness.' [Citations omitted]." *State v. Pribble*, 304 Kan. 824, 835, 375 P.3d 966 (2016).

A prosecutor is free, however, to craft an argument that includes making reasonable inferences from the evidence; and when a case hinges on which version of two

16

conflicting stories is true, the prosecutor may argue that certain testimony is not believable. *State v. Charles*, 304 Kan. 158, 174, 372 P.3d 1109 (2016).

Garrett specifically challenges the italicized portions of the following statements made during closing argument:

- "[Garrett] said that she didn't mean to burn him. This was an accident. But what else did she say? She said she was also in the living room changing another child when she heard [C.C.] scream and she ran into the bathroom and saw [H.B.] spraying the child. *But the truth is* and what she told [Detective] Hughey was, in fact, the defendant put [C.C.] in the shower, after he had pottied his pants—his diaper. *That she took the shower head. Not* [*H.B.*] *And was spraying* [*C.C.*] *Knowing that the water was hot*." (Emphasis added.)

- "[Garrett] said that when she invited Detective Monty Hughey and Bobby Albert into her house, come on in. Come on in. I don't have anything to hide. *But she had been hiding it from the very beginning. She did have a lot to hide. She was hiding the fact that she burned* [*C.C.*] *Not* [*H.B.*] *She did*." (Emphasis added.)

- "I'm asking you to find her guilty of child abuse of [C.C.] And I'm asking that you find her guilty of interference with a law enforcement officer. *Because she not only lied—or she was not only untruthful to law enforcement officers. Not only did she abuse* [*C.C*]*, but stole a little bit of* [*H.B.*]*'s innocence as well that day*." (Emphasis added.)

None of these statements contained the prosecutor's opinion as to Garrett's credibility. They were based on testimony or were reasonable inferences based on testimony—most of which concerned inconsistencies in Garrett's version of what occurred that day and how it varied from what the medical evidence showed. Nor were these comments gross and flagrant or made with ill will. Accordingly, we find no error.

Additionally, the evidence against Garrett was direct and overwhelming enough that the alleged misstatements would have had little weight in the minds of jurors. See

17

*Williams*, 299 Kan. at 540. The State has demonstrated beyond a reasonable doubt that any error did not affect the outcome of the trial in light of the entire record. We find no reasonable possibility that the prosecutor's comments challenged by Garrett contributed to the verdict in this case. See *Fisher*, 304 Kan. at 255-56; *Williams*, 299 Kan. at 541.

*Does sufficient evidence support Garrett's conviction of child abuse?*

Garrett next contends that the State failed to present sufficient evidence to support her conviction of child abuse. When a criminal defendant challenges the sufficiency of the evidence, the standard of review is whether, after reviewing all the evidence in a light most favorable to the State, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Belt*, 305 Kan. 381, 397, 381 P.3d 473 (2016). Appellate courts do not reweigh evidence, resolve conflicts in the evidence, or determine witness credibility. 305 Kan. at 397.

To convict a defendant of a crime, the State must prove each element of the crime beyond a reasonable doubt. *State v. Brown*, 303 Kan. 995, 1001, 368 P.3d 1101 (2016). For the abuse of a child charge, the State had to prove that (1) Garrett knowingly inflicted cruel and inhuman physical punishment to C.C., (2) C.C. was less than 18 years old, and (3) the act occurred on or about October 27, 2014, in Butler County. See K.S.A. 2016 Supp. 21-5602(a)(3).

Garrett first argues that the State failed to present any evidence that she took any acts to punish C.C., as required by the first element above. The State alleged she was punishing C.C. for having a dirty diaper by spraying him.

Proof of intent to discipline is not necessary to prove that the defendant inflicted "'cruel and inhuman corporal punishment'" on the victim, as the Kansas Supreme Court held in *State v. De La Torre*, 300 Kan. 591, 607, 331 P.3d 815 (2014). Garrett argues that

*De La Torre* was wrongly decided because the plain language of K.S.A. 2016 Supp. 21-5602(a)(3) requires proof of punishment. But this court is duty bound to follow Kansas Supreme Court precedent absent some indication that the court intends to depart from its prior position. See *State v. Hall*, 298 Kan. 978, 983, 319 P.3d 506 (2014). We find no such indication.

Garrett also argues that the State lacked sufficient evidence to prove knowing conduct—or specifically that she was aware that her conduct was reasonably certain to cause the result complained about by the State. She points to expert testimony that it would have taken only 10 seconds to cause C.C.'s burns, given the temperature of water from her shower, and no evidence shows that she knew that the water was hot enough to burn C.C. in that little time.

Nevertheless, a verdict may be supported by circumstantial evidence which provides a basis for a reasonable inference regarding the fact in issue. In order to be sufficient, circumstantial evidence does not have to exclude every other reasonable conclusion. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016). A conviction of even the gravest offense can be based entirely on circumstantial evidence. 304 Kan. at 25.

"Prosecutors are routinely called upon to prove a defendant's specific intent in committing a prohibited act and normally must carry that burden with circumstantial evidence." *State v. Richardson*, 289 Kan. 118, 128, 209 P.3d 696 (2009). "A jury that has convicted a defendant is presumed to have believed the State's evidence and to have drawn from that evidence all inferences favorable to the State. [Citation omitted.]" *State v. Raskie*, 293 Kan. 906, 920, 269 P.3d 1268 (2012). The evidence, although inconsistent, included Garrett's admissions that she sprayed C.C. with water immediately or soon after she discovered he had diarrhea, that she had washed clothes in the same tub earlier that day with the hottest water possible, and that when she sprayed C.C. he yelled, "[H]ot, hot."

19

Garrett presented her defense that burning C.C. was an accident, and the jury disbelieved that defense. On appeal, we cannot reweigh the evidence. Viewing all of the evidence in the light most favorable to the State, we find sufficient circumstantial evidence of knowing conduct to support the finding beyond a reasonable doubt that Garrett committed child abuse. See *Belt*, 305 Kan. at 404.

*Did the district court err by imposing the aggravated presumptive sentence without requiring the State to prove the aggravating factors beyond a reasonable doubt?*

Garrett next contends that the district court violated her Sixth and Fourteenth Amendment rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), by imposing the aggravated number in the presumptive sentencing grid box without requiring the State to prove any aggravating factor beyond a reasonable doubt to a jury. Garrett acknowledges that our Supreme Court has held contrary to her position in *State v. Johnson*, 286 Kan. 824, Syl. ¶ 5, 190 P.3d 207 (2008), but she includes the issue to preserve it for federal review. This court must follow Kansas Supreme Court precedent unless there is some indication that the court is changing positions. See *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). We find no indication that the Kansas Supreme Court intends to depart from its position in *Johnson*. Accordingly, the district court did not err in sentencing Garrett.

Affirmed.