NOT DESIGNATED FOR PUBLICATION

No. 120,838

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF WICHITA,
*Appellee*,

v.

EVERADO RAMOS-REALADO,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed April 24 , 2020. Reversed and sentence vacated.

*Kevin J. Zolotor*, *of O'Hara & O'Hara LLC*, of Wichita, for appellant.

*Michael S. Phillips*, assistant city attorney, for appellee.

Before BRUNS, P.J., MALONE and GARDNER, JJ.

PER CURIAM: The City of Wichita tried Everado Ramos-Realado for buying sexual relations, in violation of a City ordinance. At trial, Ramos-Realado did not dispute that he had agreed to pay an undercover officer $20 for oral sex. The jury found him guilty of attempt to buy sexual relations. Ramos-Realado appeals, raising four issues: The jury instruction improperly defined *hire*; the City failed to charge the more specific crime; the evidence was insufficient to support his conviction; and the relevant ordinance is unconstitutionally vague. We agree that the evidence was insufficient to support Ramos-Realado's conviction for an attempt because no evidence showed that he failed to complete the crime. Thus, we reverse his conviction and vacate his sentence.

1

*Factual and Procedural Background*

In November 2017, Officer Kailee Oswalt was working undercover, conducting a sex-trafficking sting operation on a street corner in Wichita. After a car circled her block twice and parked down the street, she approached it. The driver, Ramos-Realado, asked her how she was doing. Oswalt replied that she was fine and "was working." He asked her if she was a police officer, to which she said, "No, I [am] too young." At trial, Oswalt related their conversation:

> "A. He asked if I was doing—how I was doing again, and I told him I was good, I was just trying to make money, and he said, How much? And I said, 20. He said, For what? And I said, What do you want? And he asked for a blowjob.
>
> ". . . .
>
> "Q. Okay. All right. After you said—after he asked if you would do a blowjob, what did you say?
>
> "A. I agreed.
>
> "Q. And how did it end?
>
> "A. I told him that I had a room at the Relax Inn which was right down the street on Topeka and that I was at Room 10. He agreed and said, $20.00 for a blowjob? And I said, Yes, and he said, At the Relax Inn, Room 10? And I said, Yes. He said—asked if I was going to get in with him, and I said no, that I would drive there separately and just to meet me there, and he said, Okay."

Ramos-Realado told her he was headed toward the motel and drove south. Oswalt, who is over 18 years old, and Ramos-Realado did not exchange money and no sex act was performed.

Officer Jacob Lamunyon, who was part of the sex-trafficking sting operation, stopped Ramos-Realado's car northwest of the motel as Ramos-Realado was heading away from the motel. After being Mirandized, Ramos-Realado admitted to offering a female $20 for oral sex. He said his wife and kids would be angry with him "for playing

2

around." And he protested, "But I never went anywhere with her?" Lamunyon seized a $20 bill from the car and arrested Ramos-Realado for solicitation for immoral purposes under Wichita City Code Sec. 5.68.110. But he booked Ramos-Realado for a different charge—buying sexual relations in violation of Wichita City Code Sec. 5.68.020(b), and doing so in an anti-sex trafficking emphasis area in violation of Wichita City Code Sec. 5.68.215.

Ramos-Realado was convicted in municipal court on both counts. He then appealed to the district court. At a de novo jury trial, Oswalt and Lamunyon testified for the City. The City also admitted a tape of Ramos-Realado's conversation with Oswalt and the $20 bill seized from his car. After the City rested, Ramos-Realado moved for a judgment of acquittal on both counts, which the district court took under advisement. Ramos-Realado did not present any evidence.

During the instruction conference, the parties discussed two instructions at length—the ordinance defining "buying sexual relations" and the attempt instruction. Wichita City Code Sec. 5.68.020(b) defines "buying sexual relations" as: "(b) Hiring a person selling sexual relations who is 18 years of age or older" to perform certain sex acts. Ramos-Realado's attorney, Kevin Zolotor, told the district court, "I think the jury when they get the instruction probably would want to know what does 'hiring' mean." So, the district court included a definition for *hire* from Black's Law Dictionary: "to engage the services of another for payment." But Ramos-Realado objected to that definition, arguing for either no definition or a definition which required performance and/or an exchange of value. Using language from the ordinance prohibiting selling sexual relations, Wichita City Code Sec. 5.68.010, Ramos-Realado asked for *hire*, as used in the buying of sexual relations ordinance, to be defined as "having someone perform for hire or offer or agree to perform for hire where there is an exchange of value."

The district court overruled this objection:

3

"THE COURT: It's respectfully overruled, and I'll tell you why. First of all, the sale of sexual relations is a separate crime, so, one, it has marginal relevance to me. Two, under basic statutory interpretation, the fact that sale of sexual relations talks about the exchange of value or any of the following acts, the fact that the City, *i.e.*, the legislative branch of the City, specifically defines sale but omits that type of language in the buying of sexual relations means that an exchange of value or an act need not occur. That is standard statutory interpretation. I don't even need to get that far, though, 'cause Buying Sexual Relations, it says what it says, it's unambiguous, except 'hiring' is a little bit troublesome. I do agree with you on that, but I'm still gonna stick with the hiring. Your objection is—is noted. It's respectfully overruled. 'Hire' simply has to be defined. If you want me to define 'engage' I'm glad to do that. I'll just use *Webster's Dictionary* 'cause I looked at that as well. I'll gladly define 'engage' if you want.

"MR. ZOLOTOR: No., Your Honor. I guess so we're clear if there is an appeal, I want to be—I'm objecting to that—the definition altogether. I would ask, since there is no definition, the Court leave it to the jury to use their common sense of their understanding of the word, or—Obviously what I'm asking for is the hybrid definition, as you've discussed, between 'sale' and 'solicit,' but in the alternative I would ask if you're not gonna use that then to leave it to the jury to decide.

"THE COURT: I'll respectfully overrule that, and I'll tell you why this 'hire' definition is good. If—If there was a legal hiring—Let's just say any business, like, Hey, Kevin, I'll hire you to mow my yard, and I say, How much you gonna charge me, man? You say, $20.00. I said, Okay. I just hired you. I wouldn't pay $20.00 before you mowed my yard. That doesn't make sense.

"Now, whether your client committed any crime or not, I don't express an opinion on that as far as the jury's determination, not to ignore the judgment of acquittal, but to 'hire means to engage the services of another for payment.' And I understand exactly where you're coming from. This isn't my first case like this where the solicitation is what really is the driving force of the defense argument, but I'm gonna leave it as is 'cause legally I think it's appropriate, so objection is so noted."

The City also requested an attempt instruction, as a lesser included offense. The district court instructed the jury on attempt to buy sexual relations, in addition to buying sexual relations.

4

The jury found Ramos-Realado guilty of an attempt to buy sexual relations but acquitted him of buying sexual relations. The jury also found him guilty of the anti-sex area emphasis count, but the district court set that count aside because attempt is not listed in that ordinance—Wichita City Code Sec. 5.68.215(c).

Ramos-Realado then filed a written memo in support of his motion for Judgment of Acquittal. After a hearing, the district court denied that motion. The district court then sentenced Ramos-Realado to unsupervised probation with an underlying 6-month jail term and a $250 fine.

Ramos-Realado timely appeals.

*Does Sufficient Evidence Support Ramos-Realado's Conviction of Attempted Buying of Sexual Relations?*

We first address Ramos-Realado' contention that, given the trial court's definition of *hiring*, insufficient evidence supports his conviction of attempt to buy sexual relations.

*Standard of Review*

"'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

We review the pertinent facts first. The City charged Ramos-Realado with violating Wichita City Code Sec. 5.68.020(b)—buying sexual relations:

> "Any person who knowingly buys sexual relations is guilty of a misdemeanor. For purposes of this chapter, 'buying sexual relations' shall mean:
>
> . . . .
>
> "(b) Hiring a person selling sexual relations who is 18 years of age or older to engage in manual or other bodily contact stimulation of the genitals of any person with the intent to arouse or gratify the sexual desires of the offender or another, sexual intercourse, sodomy or any unlawful sexual act."

Neither the Wichita City Code nor Chapter 21 of the Kansas Statutes Annotated defines *hiring*. See K.S.A. 2019 Supp. 21-6421(a)(2) (the comparable state statute to this ordinance).

At Ramos-Realado's request, the district court defined *hiring*, as used in the ordinance above. It used Black's Law Dictionary, defining *hire* as "to engage the services of another for payment." But Ramos-Realado proposed an alternative definition: "having someone perform for hire or offer or agree to perform for hire where there is an exchange of value." That language is based on the City's ordinance that defines the *sale* of sexual relations as: "performing for hire, or offering or agreeing to perform for hire where there is an exchange of value," certain sexual acts. Wichita City Code Sec. 5.68.010(1). The district court rejected Ramos-Realado's proposed definition.

The City requested an attempt instruction, as a lesser included offense of buying sexual relations. When the district court asked Ramos-Realado during the instruction conference if he wanted an attempt instruction, he stated: "I still reserve my objection, but based on the prior rulings, I have no objection." By this, Ramos-Realado was saying that he objected to the definition of hire, but since the district court had ruled against him on that matter, he did not object to giving an attempt instruction.

6

*Analysis*

Ramos-Realado, although challenging the sufficiency of evidence for his attempt conviction, raises a legal challenge. He argues that the uncontroverted facts cannot legally support a conviction for attempted buying sexual relations because the facts show only the completed crime of buying sexual relations.

> *Ramos-Realado is not precluded from making a sufficiency argument.*

The City does not address the merits of this argument. Instead, the City's sole response to this issue is that Ramos-Realado is barred from challenging the sufficiency of the evidence for the crime of attempt because he asked for the attempt instruction, citing *State v. Nelson*, No. 104,070, 2012 WL 1919859, at *6-7 (Kan. App. 2012) (unpublished opinion). The majority in *Nelson* applied the invited error analysis, traditionally used for jury instructions, to preclude defendant's challenge to the sufficiency of a conviction under one of the lesser included crimes that he did not object to. But the concurrence based its opinion on a different approach, and the dissent argued that the use of invited error in this context violated due process. See 2012 WL 1919859, at *16 (Buser, J. concurring), *20-21 (Green, J., dissenting).

We need not examine *Nelson*'s rationale too closely because having reviewed the record of the instruction conference, we do not agree that Ramos-Realado invited the attempt instruction. The City requested an attempt instruction as a lesser included offense. Ramos-Realado did not. The district court then asked Ramos-Realado if he also wanted that instruction:

> "THE COURT: Honestly, I'm not really sure to give a lesser or not. Ms. Jarman, I know that you were requesting it, but Mr. Zolotor, let me kick it to you. What do you think about giving a lesser, without waiving your objection to the primary offense, Count

7

One? Do you want me to give a lesser, which would be Attempt to Buy Sexual Relations?

"MR. ZOLOTOR: Based on the facts only, because you're gonna allow this to go to the jury, we would ask for that. I mean, obviously I don't think any of it's appropriate. I don't think it should be a buy, but yes, if you are overruling my objection, which I understand, just want to make sure that's clear for the record, but owing to that circumstance – because of that circumstance I would ask for an attempt because under your logic and your theory then, it would be appropriate, although under mine, although I look at it different—

"MR. ZOLOTOR: So going with your ruling then, I would think it's appropriate, based on your rulings.

"THE COURT: You still want the lesser, Ms. Jarman?

"MS. JARMAN: I do.

"THE COURT: It's a pretty generic instruction then on the elements. It's basically what you proposed, Ms. Jarman. You good with that?

"MS. JARMAN. Yes.

"THE COURT: You good with that, Mr. Zolotor, in form?

" MR. ZOLOTOR: Yeah, only—Yes, sir. I mean, I still reserve my objection, but based on the prior rulings, I have no objection."

By this, Ramos-Realado was saying that he disagreed with the definition of *hire*, but since the district court had ruled against him on that matter, he did not object to giving an attempt instruction.

Failing to object to a proposed instruction does not have the same effect as inviting the instruction.

"There is no 'bright-line rule' for applying the invited error doctrine, and context matters. *Sasser*, 305 Kan. at 1235; see *Fleming*, 308 Kan. at 702, 423 P.3d 506 (explaining that 'the nature of the error . . . and the circumstances surrounding the drafting of instructions' are critical to an invited error analysis). On the one hand, 'the mere failure to object to a proposed instruction at the instructions conference does not trigger the doctrine.' 308 Kan. at 702. 'On the other hand, when a defendant actively

pursues what is later argued to be an error, then the doctrine most certainly applies.' *Sasser*, 305 Kan. at 1236." *State v. Cottrell*, 310 Kan. 150, 162, 445 P.3d 1132 (2019).

Ramos-Realado did not "actively pursue" an instruction for attempt. So we would not apply the invited error bar here even if *Nelson*'s rationale were sound. Ramos-Realado is not precluded from bring his sufficiency argument on appeal.

### *The record lacks evidence of failing to hire.*

We thus turn to the merits of the argument that under the district court's definition of *hire*, no evidence supports the conviction of attempt to buy sexual relations—no evidence showed that Ramos-Realado failed to hire Oswalt.

Under Wichita City Code Sec. 1.04.180(a), an attempt is "any overt act toward the perpetration of a misdemeanor done by a person who intends to commit such misdemeanor but *fails in the perpetration thereof or is prevented or intercepted in executing such misdemeanor*." (Emphasis added). See K.S.A. 2019 Supp. 21-5301(a). Kansas does not follow the modern view that "a defendant may be convicted on a charge of attempt even if it is shown that the crime was completed." 2 LaFave, Substantive Criminal Law § 11.5 (3d ed. 2019). Instead, in Kansas, failure is an essential element for the crime of attempt. See *State v. Brown*, 303 Kan. 995, 1001, 368 P.3d 1101 (2016). So for example, in *State v. Gonzales*, No. 97,572, 2008 WL 3367561, at * 2-3 (Kan. App. 2008) (unpublished opinion), the panel reversed the defendant's conviction of attempted sexual battery because the evidence showed that he completed the crime of sexual battery.

We must do the same here. It is uncontroverted that Ramos-Realado made an overt act toward buying sexual relations and that he intended to buy sexual relations. He

9

concedes as much on appeal, stating he "offered to pay an undercover police officer $20 for sodomy."

Yet, under the district court's definition of *hiring*—"to engage the services of another for payment"—coupled with the elements of attempt, which require failure to commit the greater crime, Ramos-Realado's conviction cannot stand. He did not fail to reach an agreement nor was he prevented from entering into an agreement with Oswalt for her performance of oral sex in return for his payment of $20. The crime of buying sexual relations was completed upon the agreement. Had the court instead defined hiring as Ramos-Realado desired—having someone perform for hire or offer or agree to perform for hire where there is an exchange of value—an attempt conviction would have been legally sound, as Ramos-Realado failed on both of those counts.

The only evidence possibly showing that Ramos-Realado had failed in some way was that an officer pulled him over as he drove away from the motel. We do not know why Ramos-Realado did not go to the motel, but that is irrelevant. By that time, the completed crime of buying sexual relations had already occurred. Ramos-Realado had already reached an agreement with Oswalt to buy sexual relations from her. A reasonable fact-finder, viewing the evidence in the light most favorable to the City, could not have concluded that Ramos-Realado failed to hire Oswalt or was prevented from entering into an agreement to buy sexual relations from her.

A trial court must instruct the jury on a lesser included offense where there is some evidence which would reasonably justify a conviction of the lesser offense. See K.S.A. 2019 Supp. 22-3414(3). The duty to so instruct arises only where there is evidence supporting the lesser crime. See *State v. White*, 284 Kan. 333, 347, 161 P.3d 208 (2007); accord *State v. Pham*, 281 Kan. 1227, Syl. ¶ 22, 136 P.3d 919 (2006) ("The instruction need not have been given if the evidence would not have permitted a rational fact-finder to find the defendant guilty beyond a reasonable doubt of the lesser included

10

offense."). Because no evidence supported the lesser crime of attempt here, the attempt instruction should not have been given.

*Conclusion*

Because the record does not show that Ramos-Realado failed to buy sexual relations, as is necessary for an attempt conviction, we reverse Ramos-Realado's conviction and vacate his sentence. We find it unnecessary to address his other claims of error.

Reversed and sentence vacated.